(Nos. 36106, 39992 cons.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
CLAUDE WILLIAMS, Appellant.

*Opinion filed September 24, 1968.*

WARD, J., took no part.

MARVIN E. GINSBURG and RONALD L. FARKAS, both of
Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield,
and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED
G. LEACH, Assistant Attorney General, and ELMER C. KIS-
SANE and ROBERT B. ROSEN, Assistant State's Attorneys,
of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the
court:

On September 25, 1958, the defendant, Claude "Pee
Wee" Williams, was indicted by a Cook County grand jury
for the unlawful possession and sale of a narcotic drug to
Inez Anderson, a Chicago police officer, who was working
in conjunction with the Federal Bureau of Narcotics. On
January 27, 1960, the defendant was found guilty follow-
ing a bench trial in the circuit court of Cook County and

sentenced to life imprisonment. The direct appeal from that conviction has been consolidated here with an appeal from the judgment denying defendant's post-conviction petition which alleged he had suffered a substantial denial of his constitutional rights because of the governmentally financed absence from this State at the time of his trial of witness Ruth Killingsworth.

In view of the fact that the same events occurred here which caused us to reverse the conviction of the defendant in *People* v. *Wilson,* 24 Ill.2d 425, we deem it sufficient for purposes of this review to relate only the following summary of the trial testimony in this case: Policewoman Anderson testified that she was introduced to the defendant on the night of June 10, 1958, at the apartment of Ruth Killingsworth, a special employee or informer for the Federal Bureau of Narcotics. Anderson testified that she told Williams that she (Anderson) wanted to buy some heroin to which the defendant responded, "Well, I can get it for you." The policewoman testified that she gave the defendant $150, that he returned to the apartment at 4:25 the following morning and gave her a glassine envelope containing a white substance that was later identified as heroin. The State also presented the partially corroborating testimony of a Federal narcotics agent who was stationed in a surveillance vehicle outside of Killingsworth's apartment house on the night in question. The defense testimony varied substantially from that of the State's witnesses as to the events which occurred in the apartment of Ruth Killingsworth. Williams stated that Killingsworth approached him outside the presence of Anderson, and informed him that she (Killingsworth) would like to obtain some heroin to mix with the supply that she had that was "not so good." Defendant testified that after Killingsworth telephoned a man named "Pete" at the Hayes Hotel, she told defendant that they had "everything fixed up okay", and that Williams should deliver an envelope containing $140 to Pete

at the hotel. Williams stated that he went to the hotel, learned that Pete was not in, and left the money in a box at the desk. The desk clerk at the Hayes Hotel testified for the defense and corroborated the fact that on the night in question the defendant left an envelope for Pete in a box at the desk. The defense also attempted to show the defendant's location at 4:30 on the morning of June 10 by the testimony of Williams's girlfriend who testified that the defendant, with whom she lived, was in bed at that time.

During the post-conviction hearing the testimony of John Graf, a former Treasury Department narcotics agent, was read into the record from the trial transcript of the *Wilson* case. In *Wilson,* Graf testified that sometime between the 14th and 15th of September, 1958, he drove Ruth Killingsworth to the train station, and watched her board a train bound for Fort Worth, Texas. Killingsworth had been paid $760 for her informer activities by the Federal government, and the assistant State's Attorney in Williams's post-conviction hearing agreed to the stipulation that agent Graf had sent Killingsworth out of this State. Before Williams's trial his attorney petitioned the court for an order directing the law enforcement authorities to produce Ruth Killingsworth so that the defense could interview her in order to determine whether she should be called as a witness. No such order for production appears to have been entered and Killingsworth did not testify at the defendant's trial. In Williams's post-conviction hearing the court denied relief because, in view of the fact defendant completely denied making a sale to policewoman Anderson, the testimony of Ruth Killingsworth would have been "at best * * * merely * * * cumulative, and I don't see how his rights are jeopardized in any way whatsoever by her failure to be called or to be present within the jurisdiction of the State of Illinois at the time of the Williams trial."

Our review of the record in this case shows that the defendant's trial testimony, at most, incriminates him in an

attempted sale of narcotics to Ruth Killingsworth. The indictment, however, charges him with a sale of narcotics to Inez Anderson, and a conviction for sale as charged in the indictment could not be predicated on the defendant's self-incriminating testimony regarding an attempted sale to Killingsworth. (*People* v. *Bueno,* 35 Ill.2d 545; *People* v. *Sullivan,* 23 Ill.2d 582; *People* v. *Davis,* 13 Ill.2d 211.) We believe that the court incorrectly characterized the importance of Killingsworth's possible testimony by categorizing it as "at best \* \* \* merely \* \* \* cumulative." This case is one in which the trial court was faced with the task of weighing the credibility of police officers who gave one version of events, against contrary defense testimony. Defendant now claims that if Killingsworth had not been sent out of the jurisdiction by law enforcement officials she would have corroborated his testimony. There is, of course, no certainty as to what this witness would have testified to, but it is clear that she was a material witness and that her absence from the State and resultant inaccessibility to defendant was at least partly, if not largely, due to the action of governmental agents. Under these circumstances we hold that the conviction cannot stand. Our language in *Wilson* is equally apposite here: "Here a crucial witness [Ruth Killingsworth] was deliberately sent beyond the jurisdiction of the court, and where, as here, all of the evidence is secured by or under the direction of Federal agents, the State cannot divorce itself from their conduct when it undertakes a prosecution. *Cf. Roviaro* v. *United States,* 353 U.S. 53, 1 L. Ed. 2d 639." 24 Ill.2d at 430.

The State contends that this case is distinguishable from *Wilson* because (1) the defendant there was tried 5½ months after Killingsworth was sent out of the jurisdiction while here the defendant was tried 16½ months after the informer was put on the train bound for Texas, and (2) the defense raised in *Wilson* was entrapment, while here the defendant admitted voluntarily engaging in a transaction

in which he attempted to procure narcotics. We find no substance to the distinctions urged by the State. The arrests of Williams and Wilson were effected within one day of each other; both defendants were charged with illegal sales of narcotics involving Ruth Killingsworth and Inez Anderson; in both cases the accounts of events given by the prosecution and defense were markedly different; in neither case did Ruth Killingsworth testify; and her absence from the jurisdiction was due, at least initially, to the fact that a Federal agent had sent her out of the State. In our opinion, the 16½-month interval between the informer's departure from Illinois and Williams's trial cannot totally absolve the prosecution from responsibility for her absence, for the requirements of a fair trial are not compatible with the governmental action here involved. (*People* v. *Wilson,* 24 Ill.2d 425, 431; *Thompson* v. *People,* 410 Ill. 256, 264.) While we appreciate the problems involved in protecting informers from retribution by those upon whom they inform, such protection must be by methods which are consonant with the requirements of due process for the defendant. The testimony of the absent witness was no less critical to the defense raised here than it was to the defense of entrapment asserted in *Wilson,* and we see no distinction of substance between the two cases. Reversal in both is necessitated by the governmentally prompted absence of a material witness. We note in passing, however, that during Williams's post-conviction hearing it was brought out that Killingsworth was then incarcerated in the reformatory at Dwight, Illinois, and, if the State chooses to retry this case, it presumably will be possible for either side to compel her attendance as a witness.

The judgments of the circuit court of Cook County are reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.