**People of the State of Illinois, Plaintiff-Appellee; v. Clifton Banks, Defendant-Appellant.**

**Gen. No. 52,911.**

First District, First Division.
October 27, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard Zulkey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial defendant was found guilty of the offenses of unlawful possession and of the sale of nar-

cotics. He was sentenced to the penitentiary for two to five years on the offense of possession and to ten years to ten years and a day on the offense of sale of narcotics. On appeal defendant contends that (1) the trial court improperly conducted the hearing of a motion to suppress and erroneously denied it; (2) he was not proved guilty beyond a reasonable doubt; and (3) the tactics of the State and previous rulings of the court deprived him of a fair trial.

At the trial, Police Officer David Olsen was the State's sole witness. He testified that on March 24, 1966, at about 4:00 p. m., he and his partner met a police informer, named in the indictment as Carlos Green, at 31st and South Park, Chicago. Around 6:00 p. m. the officers extensively searched Green and found no money or narcotics. They gave him $15 (a ten and a five), which had been dusted with powder and marked with a fluorescent crayon. The two officers and Green then drove to 35th and Prairie Avenue about 7:00 p. m. They parked on the east side of Prairie just south of 35th Street. It was still daylight, and Green got out and walked to 35th Street. Officer Olsen saw Green go to the door of a poolroom and motion with his hand. Green then came out of the doorway with the defendant and turned into an alley. The police officers followed in their unmarked car, but lost sight of them for about two minutes as the two kept walking in the alley and caused the officers to relocate their car. From a distance of about 75 feet Olsen saw Green give something to defendant Banks, and Banks handed to Green a brown envelope. Banks walked north and Green went to the car and handed Olsen the brown envelope received from the defendant, which Olsen found contained crushed green leaves. The officers then tried to find defendant, without success. During the search for defendant, Olsen went to an apartment at 3427 Prairie, where defendant lived, and checked the I.D.

cards of a number of men present. Defendant was not present.

Shortly thereafter, Green called the man who sold him the envelope at a telephone number the man had given him "if he wanted to get some more stuff." Olsen dialed the number, and 8:00 p. m. was set for a second meeting in an A & P parking lot at 35th and Calumet Avenue. The police officers and Green arrived at the parking lot about 7:30. Defendant Banks was walking east on the south side of 35th Street, and Green joined him. Olsen recognized defendant as the man he had previously seen in the alley. Olsen and his partner then placed defendant under arrest and searched him and found a five dollar bill and another brown envelope. They took defendant to the squad car, brought out a box with an ultraviolet light, turned the light on defendant's hands and found green powder. They also found the five dollar bill had the pre-recorded serial numbers and the words "marked money."

At the trial, and with the use of an ultraviolet light by Olsen, a glowing light appeared on the five dollar bill and the words "marked money" appeared, but with the letters "mar" missing. Also, it was stipulated that both envelopes contained marijuana, from which the resin had not been extracted.

Defendant testified that he was married and had five children and was a barber. On March 24, 1966, at 4:30 or about 5:00 p. m., he was in a poolroom at 35th and Prairie. He met Green for the first time that day in the poolroom. He denied being in an alley with Green and did not sell marijuana to him. At 8:00 p. m. he met Green in front of a delicatessen to take him home and cut his hair. He was with his cousin at that time, and Green told him that he had a car and would drive him home, "so I went across the street to a parking lot, and there I was arrested." Green at no time gave him any money. He remembered a police officer taking a five

150

dollar bill from him, but he couldn't say where he got it, but he did not get it from Green.

On cross-examination defendant stated that he never saw Green prior to March 24. While in the poolroom Green said he needed a haircut, and "I gave him my phone number and told him to call me in a couple of hours. . . . And he did call me, and I met him to cut his hair, in front of the delicatessen. . . . I did not have marijuana on me. The officer put the ultraviolet light on my pocket and hands, and I saw the green, and I saw it on the five dollar bill. I don't know where the bill came from. I won about fifteen dollars in the pool room. Carlos Green did not give the five dollar bill to me."

James Tucker, defendant's brother-in-law, testified for the defendant. On March 24, 1966, Officer Olsen walked into his mother-in-law's apartment at 3427 Prairie without a warrant or prior announcement about some time after six o'clock in the evening, when it was getting dark outside. Banks was not in the apartment, and Olsen asked each of the four men in the apartment if he was Clifton Banks. These people were between five feet five inches and six feet seven inches tall. Olsen also checked their "I.D.'s."

Officer Olsen testified in rebuttal and testified that he did not ask anyone in the apartment if they were Banks, and if he had seen Banks, he would have known him.

Considered first is defendant's contention that his pretrial motion to suppress evidence was erroneously denied.

At the hearing of the motion to suppress, Officer Olsen was the only witness. He testified as to the meeting with the informer and search of his person; the marking and the dusting with powder of the money; the meeting in the alley where he saw Green give defendant something and defendant give Green a brown envelope, in which he later found "crushed green leaves"; the sub-

sequent arrest and search of the defendant, and the finding of part of the marked money and "certain things" which the State sought to have introduced into evidence.

During the hearing it was admitted that Carlos Green was not the correct name of the informer. Officer Olsen testified that the informer was not a drug user, and that to his knowledge the informer was not paid in any way. He had met the informer two or three months previous to the arrest and at that time the informer was the victim of a robbery. He had used the informer on two or three occasions, and he had proved to be reliable; the police had secured convictions in the criminal court as a result of the informer's services and testimony. During the hearing the court denied a number of defendant's questions regarding the true identity of the informer and of the robbery.

Defendant contends that the informer was not shown to be reliable, and probable cause turned on the credibility of Officer Olsen's testimony at the hearing on the motion to suppress. He argues that Officer Olsen was not a credible witness because of several inconsistencies in his testimony at the hearing and later at the trial; that reasonable grounds for the arrest and search of defendant were not shown by the testimony of Olsen, and the failure to produce the informer at the pretrial hearing was prejudicial to defendant. Also, the defendant contends that on the second occasion when defendant appeared and was arrested, he was doing nothing illegal and there was plenty of time to get a search warrant, which the police failed to do.

Defendant's authorities on this point include People v. Wolfe, 73 Ill App2d 274, 219 NE2d 634 (1966); People v. Young, 68 Ill App2d 321, 216 NE2d 228 (Abst) (1965); and Aguilar v. Texas, 378 US 108 (1964).

The State contends that Officer Olsen was a credible witness, and his testimony at the hearing of the motion to suppress showed that he made the arrest and incident

152

search after witnessing a controlled purchase, and this was sufficient evidence to support defendant's arrest and search and independently established probable cause, making it unnecessary to disclose the identity of the informer. See People v. Carter, 109 Ill App2d 15, 22, 248 NE2d 847 (1969). We agree.

We think People v. Wolfe supplies the guidelines to be used here. There, a pretrial hearing was held on a motion to suppress evidence obtained from a police informer. One of the arresting officers was the only one to testify at the hearing, and defense counsel made several efforts to obtain the identity of the informer, but the court refused to order the name of the informer disclosed and further refused to order the informer to testify at the hearing to suppress. At the trial the same officer gave inconsistent testimony, and the informer also testified. In reversing defendant's conviction, the court said (p 280):

> "We are compelled to hold that an informer who participates in a crime, as is the situation in the case at bar, must be disclosed at a pretrial hearing on a motion to suppress, *if other evidence does not establish probable cause,* and failure to allow such a disclosure is error. [Emphasis supplied.]

> "The only witness to testify at the hearing on the motion to suppress was Detective Arnold. The testimony of Detective Arnold at the hearing contained many inconsistencies when compared with his testimony at the trial. Thus, the failure to produce the informer at the pretrial hearing, together with the inconsistencies of the People's only witness, severely damaged defendant's case as to the probable cause in the hearing on the motion to suppress."

■■ We note no substantial difference in the testimony of Officer Olsen given at the hearing of the

motion and at the trial. Minor discrepancies in testimony taken at two different times is not unusual. The discrepancies shown by this record do not destroy the credibility of Officer Olsen but go only to the weight of his testimony. (People v. Clay, 27 Ill2d 27, 32, 187 NE2d 719 (1963); People v. Smith, 102 Ill App2d 134, 142, 243 NE2d 286 (1968).) We find that defendant's motion to suppress evidence was properly denied. See, also, People v. McCrimmon, 37 Ill2d 40, 224 NE2d 822 (1967).

Considered next is defendant's contention that he was not proved guilty beyond a reasonable doubt.

Defendant argues that Officer Olsen really could not identify the defendant because Olsen's testimony that he checked the I.D. cards of the people in defendant's apartment only because they were causing a disturbance is not credible, in view of his failure on rebuttal to attempt to refute Tucker's testimony that Olsen had entered the apartment without a warrant and with a drawn gun and spoke in threatening terms to Tucker for no valid reason. Also, Olsen could not have seen the defendant from 75 feet away at 6:30 p. m. in the evening, when it was dark.

Defendant further argues that the failure of the State to produce the informer as a witness rendered the State's version of the story less believable, and that an adverse inference may be drawn from such failure. Cited in support is People v. DiVito, 66 Ill App2d 282, 214 NE2d 320 (1966), where it was held that the failure to call a key witness gave rise to an adverse inference against the State. Also, defendant argues that great doubt is cast upon the State's evidence as to the first meeting by the failure of the detectives to arrest the defendant at that time, when the possession of the marked money would have been more convincing evidence of guilt of the alleged sale than its possession two hours later, after the man in the alley, if he was not defendant, would

have had a chance to transfer the marked money to the defendant under a planned ruse.

■ We agree with the State that defendant was proved guilty beyond a reasonable doubt. Olsen's testimony was positive and credible, even though contradicted by the defendant. It was corroborated by the physical evidence, the marked or serialized money and the marijuana found on the defendant. The possibility that the informer tried to deceive the police by meeting with a man that looked like defendant by selling marijuana to him is unworthy of consideration. The testimony of one witness alone, if positive and the witness credible, is sufficient to convict, even though the testimony is contradicted by the accused. People v. Anthony, 28 Ill2d 65, 69, 190 NE2d 837 (1963).

■■ The question of the credibility of the witnesses and the weight to be given their testimony is for the trial judge, and on review this court will not substitute its judgment on such matters for that of the trial judge, who saw and heard the witnesses. (People v. Henson, 29 Ill2d 210, 213, 193 NE2d 777 (1963).) This record as a whole does not contain such inconsistencies or improbabilities that leave a reasonable doubt as to defendant's guilt. The failure of the State to call the informer, in view of the testimony here, does not give rise to an adverse interest against the State. We conclude that defendant has been proved guilty beyond a reasonable doubt of both offenses.

Defendant finally contends that the tactics of the State and previous rulings of the court deprived him of a fair trial. Specifically he complains he was denied the opportunity to have the informer as a witness at the trial, thus prejudicing him since the sole witness at the trial was not credible. Cited in support is People v. Williams, 40 Ill2d 367, 240 NE2d 580 (1968), where the informer had participated in the sale of the narcotics, and there

was a stipulation that the informer had been sent out of the State by the federal agent prior to the trial and was not available as a witness. There the court stated that the informer was a material witness and reversed the conviction.

██ We agree with the State that there was sufficient independent evidence to support defendant's conviction without the testimony of the informer, and defendant was not prejudiced by the failure of the State to produce the informer at defendant's trial.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.