THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES E. LEWIS, Defendant-Appellant.

(Nos. 72-84, 72-85 cons.;

Third District—June 14, 1973.

ALLOY, P. J., dissenting.

James Geis, of Defender Project, of Ottawa, for appellant.

James N. DeWulf, State's Attorney, of Rock Island, (William G. Schick, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, James Lewis, was charged with unlawful sale of heroin by two separate indictments. He was found guilty of both charges and he was sentenced by the Circuit Court of Rock Island County to concurrent terms of 15 to 30 years. The two cases were consolidated for appeal by order of this court.

The first issue on appeal is whether defendant's constitutional right to due process and a fair trial was violated by the trial court's refusal to allow discovery of the name and address of the informer who participated in and witnessed the alleged offenses.

(*In case no. 72-85*)

On June 2, 1972, Illinois Bureau of Investigation Special Agent Grover Webb and a female informer went to the Armstrong residence in Rock Island for the purpose of making a controlled narcotics purchase. Webb testified that the informer suggested that he go to the Armstrong house to purchase narcotics and that she was paid by and under the control of the I.B.I.

Agent Webb further testified that when they entered the house the informer introduced him. After introductions the informer first approached Mrs. Armstrong but there was no sale. Then he and the informer then went out to the porch where the informer asked the defendant to sell him some heroin. The defendant then gave the informer a tin foil packet which later turned out to contain heroin and Webb gave the defendant $50.00.

Mrs. Valeria Armstrong testified that the informer was Nancy Wyerus who knew her well enough to know that she no longer used heroin, that she and Nancy used to "shoot it together", last year sometime, that Webb and the defendant were never alone on the porch and that before departing Nancy told her that she had not been able to make a purchase.

The defendant testified that no sale was made.

(*In case No. 72-85*)

Webb testified that on June 3, 1971 he and the same informer again went to the Armstrong residence to make a purchase. That he, the informer and the defendant were alone in the kitchen. At defendant's request the informer called Patricia Armstrong (a daughter of Valeria) into the kitchen whereupon defendant reached into her blouse, removed a foil packet which he gave to Webb in exchange for $100.00. The packet contained heroin.

Patricia Armstrong testified that she had never seen Webb before the day of the trial and that on June 3 defendant was never at her home.

The defendant denied ever being in the home on June 3 and denied a sale.

Prior to both trials the defendant's attorney filed a motion wherein he sought to learn the identity of the informer-participant. The motion was denied. At the first trial on cross-examination of Webb, the defense was not permitted to elicit the informer's name, after a showing by the State that there had been threats to the life of the informer.

The facts in the case before us clearly establish that Valeria Armstrong, a defense occurrence witness had a close personal acquaintanceship with the informer Nancy Wyerus long prior to the offenses charged herein but the defendant did not.

Defendant asserts that the privilege of non-disclosure did not exist in this case, that the prosecution's refusal denied him due process of law, that he was denied his constitutional right to meet the witness against him face to face and to have process to compel attendance of witnesses in his behalf. Ill. Const., art. I, sec. 8.

Could the privilege of refusing to divulge the identity of the informer be properly exercised in this case?

█ It is a general rule, usually referred to as "the informers privilege", that the government is privileged to withhold from disclosure (notwithstanding its relevance) the identity of persons who furnish information relating to violations of law to officers charged with enforcement of that law. The privilege is founded on public policy, and seeks to further and protect the public interest in effective law enforcement. (Annot., 1 L.Ed.2d 1998.) There is an exception to the general rule, which is that if disclosure of the informer's identity is necessary to show the innocence of one accused of crime that the rule must yield to a stronger one which says that one is not to be condemned when his innocence can be established. Annot., 83 L.Ed. 155.

██ Defendant cites *Roviaro v. United States*, 353 U.S. 53, 1 L.Ed.2d 639. In *People v. Mack*, 12 Ill.2d 151, 165, our supreme court first discussed *Roviaro* in the following language, "The *Roviaro case* also pointed out that the privilege is not absolute and added to the already established exceptions those cases where disclosure is required by fundamental fairness, e.g., where the disclosure of the identity is relevant and helpful to the defense of the accused, or is essential to a fair determination of the cause. Accordingly, since the informer against Roviaro had helped set up the commission of the crime, * * * *and because he had been present at its occurrence* [emphasis supplied], the court con-

cluded that nondisclosure was manifestly unfair, pointing out that the informer was in fact a participant in the crime and that conversations with Roviaro, (heard by a concealed police officer,) which only the informer could amplify or contradict, had been used as evidence to secure the conviction." (In *Mack*, the facts showed that the informer neither participated in the crime nor was he present.)

In *People v. Durr*, 28 Ill.2d 308, the supreme court again recognized the rationale of *Roviaro* but found that the facts of *Durr* were distinguishable since the informer was not "so involved in the commission of the offense that his availability to testify was essential to fundamental fairness.

In *People v. Wilson*, 24 Ill.2d 425, the informer was a "key witness" present at the sale. The defense was entrapment. The informer had been sent beyond the jurisdiction of the court. The court held that *the testimony of the informer as to what was said was critical* and that the ruling in denying defendant's motion to compel her production deprived defendants of a fair trial. *Wilson* was followed in *People v. Williams*, 40 Ill.2d 367 (same facts). Also, see *People v. Jarrett*, 57 Ill.App.2d 169; *People v. Castro*, 10 Ill.App.3d 1078.

In *People v. Williams*, 38 Ill.2d 150, 152-153, the court stated that the principles of *Roviaro* were recognized "* * * when the informer is a material witness on the issue of guilt or innocence of the defendant at the trial." "[W]hen the informers testimony may bear upon the question of guilt or innocence rather than upon probable cause, the government's interest in protecting its sources of information must yield to the defendant's right to a trial based upon all the relevant evidence".

Cleary, Handbook of Illinois Evidence (2d ed.), sec. 10.29 says, "The privilege is based upon the assumption that the identity of the informer is not relevant to the issues in the case. If this assumption is unfounded in the particular case, as when the informer was a participant in or *witness to the alleged crime and hence might give testimony helpful to the accused, * * * the privilege is recognized as being inapplicable.*"

76 A.L.R. 2d 282 states the privilege of non-disclosure must give way and disclosure of the identity of an informer is required where * * * (286) the informer is able to testify directly about the very transaction constituting the crime. Also see McCormick, Evidence (2d ed.), sec. 111; 21 Am. Jur. 2d Criminal Law, sec. 332; 58 Am. Jur. Witnesses, sec. 534 (1972 Cumulative Supplement); Jones on Evidence (6th Ed.), sec. 21; 39; Illinois Evidence Manual, Gard (1972 Supp.) Rule 442; 23 C.J.S. Criminal Law, sec. 954b; Nedrud, The Illinois Law of Criminal Investi-

gation, part A, sec. 4.5; Hunter, Trial Handbook for Illinois Lawyers (4th ed.), sec. 17:6; Supreme Court Rule 412 (j)(ii), Committee Comments.

■■ And, as was stated in *Roviaro*, "The desirability of calling John Doe as a witness, or at least interviewing him in prepartion for trial, was a matter for the accused rather than the government to decide."

■■ We conclude that under the circumstances the trial court committed prejudicial error in permitting the People to withhold the identity of its undercover employee in the face of the demands by the accused for her disclosure. The judgments of the Circuit Court of Rock Island County are reversed and the causes remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

Mr. PRESIDING JUSTICE ALLOY dissenting:

I believe that the decision of the trial court permitting invocation of the informer's privilege in the present case should be upheld. There are grave policy questions involved in this case and in two companion cases being filed simultaneously—*People v. Weathers, post,* p. 776 and *People v. Flippo, post,* p. 774—and if any change or modification in the Illinois rule is made, it should be made only by the Illinois Supreme Court. The effect of the majority opinion would be to destroy the informer's privilege in all cases in which the so-called informer is present or may be a witness at the time of the commission of the narcotics violation. I do not believe that the majority position is consistent with the United States Supreme Court decision in *Roviaro v. United States,* 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623, nor does it bear any direct relationship to any other applicable decision of the United States Supreme Court or of the Illinois Supreme Court.

The so-called "informer's privilege" is, in reality, the privilege of the government to withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officials. In the public interest for effective law enforcement, the privilege recognizes the obligation of citizens to communicate their knowledge of the commission of a crime to the proper authority, and, by preserving their anonymity, encourages them to perform that obligation. (*People v. Mack,* 12 Ill.2d 151, 164.) As employed, the "privilege" has been extended to include not only the citizen who merely furnishes information, but, also, to embrace persons who, in assisting law enforcement officials, help the authorities establish the commission of a crime by a defendant, notably in narcotics cases, (E.g., *People v. Banks,* 116 Ill.App.2d 147,

253 N.E.2d 631.) The privilege to which we have referred, however, is not absolute. The court in *Roviaro v. United States*, 353 U.S. 53, 1 L.Ed. 2d 639, 77 S.Ct. 623, in basing its decision on fundamental requirements of fairness, held that "Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." (353 U.S. 60-61, 77 S.Ct. 628.) The *Roviaro* case was treating with a problem of the general character we have before us involving the right of the government to withhold the identity of an informer who helped set up, and participated in, a crime involving narcotics.

It is the main thrust of defendant's argument before us that the decision is to be read as establishing a rule that disclosure must be made when an informer is present at the time of sale. I believe it is apparent from reading the case, that *Roviaro* neither intended nor propounded such an inflexible rule. After stating the problem, the Supreme Court in that case stated, "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (353 U.S. at 62, 1 L.Ed. 2d at 646, 77 S.Ct. at 628-629.) The court thereafter, in the *Roviaro* case considered the circumstances of the case and the possible significance of the informer's testimony and concluded, in balancing the various factors, that the informer's identity should have been disclosed in that case. We are, therefore, confronted here, not with the application of a fixed rule, but a determination of whether disclosure should have been required under the particular circumstances in the records of the cases before us. Defendant, relying upon *Roviaro* and *People v. Williams*, 40 Ill.2d 367, contends that the circumstances require that the identities of the informer or "special employee" be disclosed. It is my conclusion that the circumstance which led to the result in the *Roviaro* and *Williams* cases have no compelling parallels in the cases before us. This is particularly true since defendant's denial that he had committed the crimes removed any issue of entrapment. (See: *People v. Jones*, 73 Ill.App.2d 55.) It is also significant that the informer did not testify and, also, that the informer was not the purchaser of the narcotics in the sale which forms a basis of the conviction.

In the *Roviaro* case, where the issue was decided with reference to a charge that the accused had illegally transported narcotics, the informer

was the sole outside participant (with the defendant) in the crime. The conviction of the accused rested on the testimony, of two law officers. One of the officers had been in the surveillance car which followed the automobile of the informer, in which the latter and the accused were riding. The other officer was concealed in the trunk of the informer's car, where he eavesdropped on the conversation of the accused and the informer, a circumstance which caused the court to comment that the officer's testimony as to the conversation emphasized the unfairness of non-disclosure in that case. Thus, under such circumstances, the accused was prevented from cross-examining the only person with whom he had dealt and the only person who knew all that transpired. In the cases before us, by way of contrast, defendant did not deal with the informer alone. On the contrary, the evidence in each case showed a direct sale of narcotics to the agents who testified, and each was available to defendant for cross-examination concerning the transactions.

*People v. Williams*, 40 Ill.2d 367, did involve a sale of narcotics to a policewoman in the presence of an informer. The principal issue on appeal, however, did not center around the disclosure of identity, but on the circumstances that a known informer had been sent outside the jurisdiction of the court and was thus rendered unavailable to the accused as a witness. In addition, the testimony of the policewoman created an issue as to whether the narcotics had been sold to the policewoman, as charged in the indictment, or to the informer. The essence of the court's decision was that the deliberate removal of the informer from the jurisdiction of the trial court was a violation of the accused's Sixth Amendment right to have compulsory process for obtaining witnesses in his favor. (See: *United States v. Wolfson*, 322 F.Supp. 798, 819.) Because of this basic unfairness and the conflict of evidence peculiar to the *Williams* case, it was held that the accused was entitled to a new trial in which he could compel the attendance of the informer. Similar or comparable unfairness on part of the government did not occur in the cause before us. The ony circumstance common to both cases is that defendant's denials that he sold the narcotics created a conflict with the testimony of the narcotics officers. In my opinion, this single circumstance is insufficient to require disclosure of the true name of the informer.

For many years its has been a basic tenet of criminal law that the testimony of one witness alone, if positive and if the witness is credible, is sufficient to convict, even though the testimony is contradicted by the accused. (*People v. Catlett*, 48 Ill.2d 56.) No distinction has been made in the narcotics cases. (*People v. Anthony*, 28 Ill.2d 65; *People v. Banks*, 116 Ill.App.2d 147.) As observed by the court in the *United States v.*

*McCorkle* (7th Cir), 413 F.2d 307, where an agent testified to the sale of narcotics and defendant denied it, it was determined that the court was entitled to narrow the issue to one of credibility. I, therefore, see nothing in *Williams* or *Roviaro* which abrogates this principle, or stands for the proposition that the credibility of a narcotics agent must be held to be shrouded with doubt merely because an informer participated with him in the crime. In the context of defendant's contention, it is clear that neither *Williams* nor *Roviaro* establish that the existence of a conflict in the testimony of the accused and a witness for the prosecution, creates a circumstance which requires that the identity of an informer be disclosed. To hold otherwise would effectively nullify the "informer's privilege" and conceivably could nullify effective Narcotics Act enforcements.

In the *Williams* case, additionally, the conflicting testimony created an issue as to whether the accused had sold the narcotics to the policewoman or to the informer, an issue which the officers in the surveillance car could neither corroborate nor deny. In the cases before us, the issue was whether the agent had purchased narcotics from a defendant or had even been to defendant's house. Obviously, the testimony of the surveillance officers to the effect that the respective agents and special employee were observed entering defendant's residence, had a certain corroborative value. The efforts made not to disclose the identity of an informer are obviously based not only on the public desire to make use of such informer by preserving his anonymity, but also, to guard against his removal or destruction. The prosecution's interest in protecting the anonymity of an informant has been manifest in other cases decided in this court, such as *People v. Rogers*, 6 Ill.App.3d 1092, 286 N.E.2d 365, where defendant's testimony was that the informer had provided the heroin which was the basis of the charge of illegal sale by defendant. The informer was not called by the prosecution, even though this was the only effective way in which the State could meet such defense testimony. The *Rogers* case is an illustration of an entrapment defense in which the public interest in maintaining the anonymity of the informer outweighed any potential value in assuring the conviction in a particular case under consideration.

It is also noted that the so-called "informer's privilege" has been incorporated in the Illinois Supreme Court rules relating to criminal prosecutions in Rule 412 (Ill. Rev. Stat. 1971, ch. 110A, §412(j)(ii)), where it is specified that a disclosure of an informant's identity shall not be required where his identity is a prosecution secret and failure to disclose will not infringe the constitutional rights of the accused. It is further provided in that Rule that disclosure of identity should not be denied as to witnesses who are to be produced at a hearing or trial. Recogni-

tion of the value of retention of the so-called informer's privilege has, therefore, been codified by our Supreme Court by Rule and should be implemented, where appropriate, as in the instant case.

In *McCray v. Illinois,* 386 U.S. 300, 18 L.Ed.2d 62, 87 S.Ct. 1056, the United States Supreme Court had before it an Illinois case involving a motion to suppress evidence which evidence was the basis of defendant's conviction. Defendant contended that his constitutional rights were violated, in that he did not receive a fair trial, in violation of the Federal Constitution in the Due Process clause of the Fourteenth Amendment and the Sixth Amendment right to confrontation of witnesses. Defendant asserted that this resulted from the failure of the Illinois Court to force the disclosure of the identity of an informer upon whose statement the sworn testimony of the arresting officers was based. While this action involves a question of probable cause to sustain an arrest of a narcotics suspect and a search of his person, it was, truly, the effective basis for the conviction of such defendant, when heroin was found by the arresting officers in defendant's possession. This judgment of conviction was affirmed by the Supreme Court of the United States.

We need not speculate as to what the Supreme Court actually meant by the *Roviaro* decision. In the course of the *McCray* opinion, the Supreme Court again discussed the *Roviaro* case and noted (18 L.Ed.2d at 70) that what *Roviaro* made clear was that the Supreme Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity, even in formulating evidentiary rules for federal criminal trials. The Supreme Court also stated (18 L.Ed.2d at 71): "We are now asked to hold that the Constitution somehow compels Illinois to abolish the informer's privilege from its law of evidence, and to require disclosure of the informer's identity in every such preliminary hearing where it appears that the officers made the arrest or search in reliance upon facts supplied by an informer they had reason to trust. The argument is based upon the Due Process Clause of the Fourteenth Amendment and upon the Sixth Amendment right of confrontation * * *." The Supreme Court points out very clearly that neither the Due Process Clause nor the Sixth Amendment right to confrontation of witnesses is violated nor was defendant deprived of any rights to cross-examine the arresting officers themselves because of their refusal to reveal the informer's identity. It was correctly pointed out that if this argument would be followed no witness on cross-examination could ever constitutionally assert a testimonial privilege, including a privilege against compulsory self-incrimination guaranteed by the Constitution itself. The court stated that it has never given the Sixth Amendment any such construction and declined to do so.

The rationale of the majority opinion in the instant case, if applied to the so-called probable cause cases (where evidence which could convict is sought to be suppressed), could be just as logically applied to such cases. If the same argument and principles would be applied, the informer's privilege would in effect cease to exist. If a distinction is attempted between the situation such as existed in the *McCray* case, where the arrest and seizure of the heroin on the person of the defendant was the essence of the case as against defendant, and cases such as the type we have in the causes now under consideration, we find no fair distinction between cases such as those before us and the situation in the *McCray* case. At least in the cases before us, the defendant would actually have seen the informer and be in position to determine whether the informer could possibly have been involved in an entrapment problem or some other situation which could be raised as a matter of defense. In the cases involving the unknown informer, a defendant is in position where he knows nothing of the informer and presumably is completely deprived of any information which might be helpful to him in preparing his defense. Other questions necessarily would arise in connection with such attempted distinction. How far would the rule requiring disclosure of the identity and the address of an informer be extended? Is it to be extended to the informer who simply takes an agent to the home at which the suspect was to be seen, and where the informer does not enter? Does it apply to an informer who simply introduces an agent to a suspect? Does the fact that the informer sees the agent going into the residence make him a witness to the narcotics crime which ensues? Does the fact that the informer sees the agent talking to the defendant make him a witness to the crime and require that his identity be disclosed? Does this apply to the numerous cases where an informer accompanies the officers to the scene where a suspect is apparently engaged in the process of transferring or selling narcotics, and where the informer simply points out the suspect and the officers proceed with an arrest in the absence of the informer, who may still be within view?

As we have indicated, serious policy questions are involved, and, as stated in *Roviaro*, the question of fairness to a defendant must be weighed in the light of all of the facts and circumstances and of the public policy to be applied in the effort to prevent the destruction or removal of an informer if his true identity is disclosed. In none of the cases before us has there been any contention that there was any entrapment nor did the informer testify nor was a sale made to an informer which would form the basis of a conviction. In all of the cases the defendants contended that no sale was made, and in most instances, even denied that the agent was present or had even been seen by the de-

fendant. No contention is made that the informant would be called as a witness by defendant or that anything could be disclosed by the informer which would be other than cumulative of the testimony of the officer testifying in the case. It is apparent from the cases which have been heard in this court that the proliferation of narcotics violations has been of such nature as to pose a serious national problem of such magnitude as to call forth all of the ingenuity and resources of law enforcement authorities in an effort to cope with this problem. It is apparent also that the violators keep abreast of decisions with respect to the issues with which we are confronted and seek to adapt their activities to trends in enforcement procedure. By way of illustration, in the *Lewis* case, we note that the narcotics which were sold to the officer, in one instance, were obtained from the brassiere of a young lady who was called in by defendant, and, who herself, was not involved in the sale of the narcotics but simply acted as a repository for the narcotics to be on call by the defendant. It is apparent, therefore, that a search warrant based on information from an informer to search the residence and the person of the defendant Lewis, as a suspect, would not have brought forth any narcotics, since the young lady, as a walking repository of the narcotics would not have been subject to search in such case. We cite this simply to indicate, not only the ingenuity of defendants in seeking to avoid detection, but also the nature of the problem of dealing with narcotics and the apparent need for the aid of informers as one means of trying to cope with the widespread narcotics traffic.

The Supreme Court of the State of Illinois in its Rule 412(j)(ii) has recognized the value of retaining the informer's privilege, and, in the Committee Comments following such Rule 412, it is specifically stated that "the value of informants to effective law enforcement is so highly regarded that encouragement of their use, through protection of their identity, has resulted in the development of one of the few privileges accorded to the State. The public intrest in protecting the sources of information concerning the commission of crimes is served by providing for the non-disclosure of the identity of informants except when compelling circumstances require it." The Illinois rule (Rule 412) is a practical and effective implementation of a fair rule to be applied with respect to the informer's privilege. It provides that, if the informer testifies, his identity must be disclosed, whether he testifies at a hearing or a trial. It is noted that the rule specifically refers to preliminary or probable cause hearings as well as the trial. The rule retains the general language authorizing nondisclosure of the identity if the standards of *Roviaro* are met.

As indicated in *Roviaro*, no fixed rule should be applied with respect

to disclosure of identity of informants. It calls for a balancing of public interest in protecting the flow of information as against the individual's right to prepare a defense. Basically, the proper balance should take into consideration the crime charged, possible defenses, possible significance of the informer's testimony, and other relevant factors. As indicated in *United States v. Day*, 384 F.2d464, in a concurring opinion of Circuit Judge McLaughlin, *Roviaro* places the discretion in the trial judge in weighing and balancing the conflicting interests of law enforcement and the individual's right to prepare his defense. Justice McLaughlin concludes that the trial judge becomes the "arbiter of fundamental fairness" on the question of disclosure of an informer. He also points out that a decision of non-disclosure is justified in a situation where any testimony by an informer, even if it may be helpful, may not be decisive on the ultimate issue of guilt or innocence and where its weight is not greater than the public interest in fighting illegal sales of narcotics. As stated by Justice McLaughlin, disclosure based on a "mere supposition" would completely block the use of an informer in fighting illegal narcotics sales. 384 F.2d 464, 469.

I believe that the Illinois Supreme Court has established a fair rule in Illinois in Rule 412(j)(ii). If an informer testifies, his identity must be disclosed. Under a factual situation as exists in *Roviaro*, if the sale leading to conviction is made to the informer, and the informer does not testify, then his identity should be disclosed. If an informer, however, is simply present or a witness to a part of a narcotics violation, but does not testify, although the purchasing officer does testify, then the trial judge, as the "arbiter of fundamental fairness", in balancing public interest against defendant's right to preparation of his defense (in cases such as we have before us) should properly be permitted to approve non-disclosure of the informer's identity. It is believed that this is now the law of Illinois, that it is expressed in Rule 412(j)(ii), and that it should be upheld.