THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN SAM APRILE, Defendant-Appellant.

(No. 12116; ■■■■■■■)

Fourth District—November 21, 1973.

*Rehearing denied December 14, 1973.*

Robert P. Moore, of Champaign, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Roy E. Clark, Senior Law Student, of counsel), for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Defendant was convicted on two counts of an indictment charging violations of the Uniform Narcotic Drug Act. The counts are the same except for the dates of the offense. Paraphrasing, they charge that defendant committed the offense of illegal sale of narcotic drugs in that he did knowingly offer to sell certain narcotic drugs to a special agent of the Illinois Bureau of Investigation and then did sell him "the non-narcotic substance or material the same not being authorized by the 'Uniform Narcotic Drug Act' in violation of ch. 38, sec. 22—3, Ill. Rev. Stat. 1969". The citation of section 22—3 is incorrect—it should have read, section 22—40. This section provides that whoever agrees, consents, or in any manner offers to unlawfully sell any narcotic drug and then sells, dispenses, or gives any nonnarcotic substance or material shall be guilty of an offense. The misquoted section 22—3 states that it is unlawful for any person to sell, possess, administer or dispense or compound any narcotic drug. The differences are easy to discern, and it makes a difference so far as penalties—22—3 provides for a minimum of 10 years to life while section 22—40 it is 1 to 10 years. Defendant's sentence was for 3 to 9 years.

He argues that these counts should have been dismissed because of the miscitation of section 22—3 instead of 22—40. The motion to dismiss did not specifically point out the miscitation, although the motion in arrest of judgment does—"There was a fatal variance, etc., etc." He also argues as grounds for dismissal the allegation that he committed the "offense of Illegal Sale of Narcotic Drugs". He argues that the offense defined by section 22—40—with which the language of the indictment conforms—is not entitled "Illegal Sale of Narcotic Drugs" but is under the style of "Solicitation of Minors—Sale of Non-Narcotics as Narcotics—Penalties".

■■ This argument need not detain us for we have already answered it before in *People v. Robinson*, 7 Ill.App.3d 704, 288 N.E.2d 484. There an indictment was dismissed for the same reason urged here. In answer on appeal, we said then that "[a]n indictment or information otherwise valid that is defective in that it does not cite the statutory provision alleged to have been violated is not thereby rendered void" and that since the indictment stated an offense within the purview of section 22—40, it was error to dismiss the indictment. There, as here, the dismissed count charged defendant "with the illegal sale of narcotic drugs in that he did knowingly agree, consent, or offer to sell certain narcotic drugs to a named person and then did sell a nonnarcotic substance or material in volation of Ill. Rev. Stat. 1969, ch. 38, par. 22—3." We see no good reason to reexamine *Robinson* as it is still, in our opinion, based soundly on logic and precedent.

■■ Our resolution here of this point answers two other contentions—improper instructions and the failure of the prosecution to prove defendant guilty of the illegal sale of narcotic drugs beyond a reasonable doubt. Both arguments are based on the premise that he was being tried for the sale of narcotic drugs under section 22—3. As we have seen, the counts upon which the conviction rests charged a violation of section 22—40. The instructions complained of were in that vein—offering to sell a narcotic drug and then selling a nonnarcotic substance. Again defendant points to the use of the phrase—"illegal sale of narcotic drugs" in the instructions questioned. It is true that IPI Instructions 17.17 and 17.18 for use in prosecutions under section 22—40 do not use "illegal sale of narcotic drugs", but instead instruct, "A person violates the Narcotic Drug Act" (17.17), and "To sustain the charge of violating the Narcotic Drug Act" (17.18). Otherwise, the two instructions inveighed against do follow these sections appropriately entitled Misrepresenting Nonnarcotic Substances, and Issues in Misrepresenting Nonnarcotic Substances. Obviously, it would have been better form to have used verbatim these two instructions, but the use of the characterization "illegal sale of narcotic drugs" instead of the "Narcotic Drug Act" is, in our opinion, a detail. It is hard to discern any prejudice to the defendant in the misdesignation of the Act under which the charge is brought nor that the jury was in any way or manner misled. After all, to use the verbs "violates" or "violation" with the "Narcotic Drug Act" is saying much the same thing in our context as, "To sustain the charge of Illegal Sale of Narcotic Drugs the State must prove, *etc.*" or "A person commits the crime of Illegal Sale of Narcotic Drugs, *etc.*" With regard to proof beyond a reasonable doubt, the gist of defendant's argument is that proof was insufficient to sustain a violation of section 22—3—sale of a

narcotic drug. This is true, but as we have seen, the defendant was charged and tried under section 22—40, and the evidence was more than sufficient on this score to sustain a conviction.

■■ Defendant moved for a change of venue and its denial is assigned as error. It is true, of course, that a defendant is entitled to a change of venue if it appears there are reasonable grounds to believe that there exists such prejudice that he cannot receive a fair trial. (Ill. Rev. Stat. 1969, ch. 38, par. 114—6.) But the burden is upon the defendant to show that the prejudice alleged does actually exist and that by reason thereof there is a reasonable apprehension he cannot receive a fair trial. Defendant's motion was supported by numerous newspaper clippings, a survey, his affidavit and that of the person conducting the survey.

■■ One hundred twenty-one persons were questioned, ninety-six responded that they had read at least one article about the defendant and that sixty-six of this group believed he was guilty. Defendant argues that because 54% of the persons sampled had prejudged the matter adversely, this provides with the other material, "reasonable grounds" to believe that prejudice did actually exist—that such surely gives rise to a reasonable apprehension that he could not (and therefore did not) receive a fair and impartial trial. The allowance of the motion is discretionary—subject, of course, to the caveat that such is not absolute and that an abuse thereof is error. But in the nature of things, the abuse must be very apparent for a court of review to overrule a trial judge on this type of determination. He is the one who is on the scene literally and figuratively, who knows best the local climate and is thus in the best position to determine whether or not there should be a change of the place of trial. Granted that there was considerable publicity, particularly following the defendant's arrest, this in and of itself does not show actual prejudice, particularly when the trial followed many months later. And the survey falls far short of establishing reasonable grounds for the trial judge, much less a reviewing court, to conclude the actual existence of prejudice of persons residing in the county of the place of trial—in this instance Champaign County. We will give defendant the benefit of the doubt that the persons queried were residents of that county, but even so, this is an infinitesimal section of the population—even assuming a representative cross-section. At least, this would not, as we have said, furnish a basis for us now saying that the trial judge abused his discretion. *People v. Berry*, 37 Ill.2d 329, 226 N.E.2d 591, is very much in point. The news coverage was extensive—apparently as extensive as here, and various pejorative descriptions, to put it mildly, of defendant appeared in the local press—"former convict, a notorious holdup man, a habitual criminal and a menace to society". There was also a reference

to the fact that he was out on bond pending his appeal for a previous robbery conviction with follow-up stories of the revocation of the appeal bond and resulting incarceration. And to cap everything, an editorial commenting on his petition for a change of venue "to the effect that perhaps the case would have to be taken to Chicago where 'his kind would get lost in the myriads like him' and he wouldn't be singled out for newspaper attention". With regard to the media stories, we quote:

> "* * * the rule is that an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial. [Citation.]
>
> In applying this rule each case must be considered under its own facts. * * * Here, the trial court was presented with a motion for a change of venue supported only by a number of newspaper clippings and an affidavit of the defendant that he did not believe he could receive a fair trial in the county. Unless one accepts the automatic-presumption theory of defendant the affidavit and clippings reveal nothing as to the temperament of the community. In fact, the bulk of the clippings are legitimate news stories of the crime, published the same day or the day following, and the motion was not filed nor the trial held until approximately four months later * * *."

The motion was properly denied.

■■ Finally, defendant argues that the State failed to make available the whereabouts of a named person or otherwise make him available to the defense and that such failure deprived him of a fair trial particularly as it related to the defense of entrapment. It is defendant's argument that this person was an informer, in the employ of the Illinois Bureau of Investigation, and the person who "set him up" for the sale of the nonnarcotic substance to an agent of the Bureau. The State proved its case without him and no duty we can see devolved on the State to call him as a witness or have him otherwise available. This is not the situation found in *People v. Jones*, 73 Ill.App.2d 55, 219 N.E.2d 12, where the crucial elements of the prosecution's case depend upon an informer, as in such happenstance "he must be called upon to controvert the testimony of the defendant tending to prove entrapment." In our factual context the informer's activities vis-à-vis the defendant can hardly be characterized as "crucial elements of the State's case". Instead, the State made its case principally from the evidence of the agent who made a "buy" from defendant—following negotiations over a pe-

riod of several days. That the informer—at least according to the defendant's testimony—introduced him to the agent who thereafter effected the "buy", does not render the informer's testimony "crucial" so far as proving the elements of the charge or controvert entrapment. While according to defendant, the informer—together with the agent—made a series of phone calls to him, it is apparent that the agent and not the informer did most of the negotiating, and that he in fact consummated the sale. Defendant himself negated entrapment, testifying that he went along with the sale because he wanted to "get even" with the informer, as he had previously fired him as an employee on suspicion of theft. All in all, based on defendant's testimony the informer knew really very little. No "crucial elements" of the State's case depended upon him, there was no marked conflict in the testimony that he could have resolved, as was the situation in *People v. Williams*, 40 Ill.2d 367, 240 N.E.2d 580, and while it is easy to make the assertion that the informer was spirited out of the state and made unavailable as a witness, such was never established as it was in *People v. Wilson*, 24 Ill.2d 425, 182 N.E.2d 203, mandating a new trial. That the informer didn't do the defendant a favor is no reason from a due process point of view of requiring the State to produce him for defendant or otherwise have him available as a witness.

■■ The defendant was fairly tried and fairly convicted. The sentence is within the scope of the penalty provided by section 22—40. (Ill. Rev. Stat. 1969, ch. 38, par. 22—40.) The minimum is one third of the maximum. While defendant asserts there was confusion as to what he was on trial for, such pretty much pales, when the conviction was had in the context of two other counts charging sales of narcotic substance—section 22—3 violations—as to which there was a directed verdict at the conclusion of the State's case. Another assertion that there was a break in the chain of title of the substance sold likewise pales when it was determined to be nonnarcotic. The substance sold was identified as that purchased by the agent and in substantially the same condition. That being so, such was enough. Accordingly, the judgment appealed from is affirmed.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.