THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GILBERT STUMPE, Defendant-Appellant.

Fifth District   No. 78-429

Opinion filed December 28, 1979.

John H. Reid and Jeff M. Plesko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant Gilbert Stumpe appeals from his conviction in the Circuit Court of St. Clair County for violation of the Controlled Substances Act.

Defendant was convicted of selling less than 30 grams of a substance containing heroin to an undercover agent of the Illinois Department of Law Enforcement in violation of section 401(d) of the Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(d)). The sale was arranged and witnessed by an informant who departed the State following defendant's arrest and remained unavailable at trial. The informant's existence was disclosed by an agent of the Department during defendant's preliminary hearing on January 18, 1978. Subsequent pretrial discovery confirmed his name as Edward Conrad, whose identity was already known to defendant.

Defense counsel moved to dismiss the indictment on grounds that the conduct of the agents of the State in arranging or acquiescing in Conrad's absence deprived him of a fair trial and constituted a denial of due process. The motion was heard and denied on June 22, 1978, after the court concluded from testimony by Department agents that the informant's absence had not been procured or encouraged by the State. Defendant thereupon waived his right to a jury trial. Defendant was convicted and sentenced to four years' imprisonment, after electing to be sentenced under section 5—8—1 of the amended Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1).

On appeal, defendant contends that the State's actions in causing or acquiescing in the informant's absence deprived him of a fair trial. He also challenges the admission of Conrad's hearsay statement identifying defendant's photograph, the sufficiency of the court's admonishments concerning sentencing alternatives, and the court's consideration of certain sentencing factors.

During the hearing on defendant's motion to dismiss, agent Murrey of the Department of Criminal Investigation testified that he had arranged for Conrad's services in approximately 12 narcotics cases and specifically advised him that he would be required to testify at trial. Agent Murrey's working contact with Conrad terminated in December 1977. When requested by the State's Attorney's office to locate Conrad for defendant's trial, Agent Murrey was unable to do so. He learned that he had left the State, reportedly for Florida, and contacted Florida police authorities, some six months after Conrad's departure, in several unsuccessful attempts to locate him. He also searched for him in East St. Louis and contacted his former acquaintances.

Agent Donald Grimming testified at the hearing that on the day following defendant's arrest, Conrad came to the Department, suitcase in hand, and stated that his life was in danger and that he planned to go to Florida. Because of the arrest of defendant and others, his "cover had been blown." He asked for and received $100 in payment for his services and a ride to the Greyhound bus depot, as he did not own a car. None of the agents witnessed or assisted the ticket purchase. Agent Grimming testified that he instructed Conrad prior to his departure that "he should notify us exactly where he was going to be staying when he got to Florida. He told us when he was preparing to leave he didn't know for sure what he was going to be doing when he got there or where he was going. We instructed him to call us and let us know when and where he was going to be in Florida."

Conrad never renewed contact with the Department of Law Enforcement. Agent Grimming's subsequent efforts to locate Conrad through Florida police authorities proved unsuccessful. He stated that Conrad was placed in a fugitive status in an effort to locate him. During cross-examination the agent testified that the Department did not have the capability of furnishing protection to Conrad for an extended period of time in order to insure his safety and prevent his flight.

The trial judge concluded from the agent's testimony that "the only evidence before this court is that the State did absolutely nothing to conceal this witness" and denied the motion to dismiss.

At trial, Agent Ed Clanton, a former undercover agent for the Department of Criminal Investigation, testified that on July 25, 1977, he and Al Lee, an agent of the United States Bureau of Alcohol, Tobacco and Firearms, met with Conrad for the purpose of arranging a heroin purchase from the defendant. The three men then drove to defendant's home in East St. Louis. Lee remained in the car while Conrad and Agent Clanton went into the house. According to Clanton, the defendant took them into a back upstairs bedroom where they neither saw nor heard any other occupant of the house. After Conrad and defendant negotiated the

terms of the purchase, Conrad and Clanton each paid the defendant with marked bills. The defendant then placed seven heroin capsules on a table. Conrad took five of them and handed two to Clanton. After they left defendant's house and joined Lee in the car, Conrad handed his five capsules to Clanton. Agent Lee testified that he saw the capsules change hands between Conrad and Clanton.

On the day after the transaction, Agent Clanton identified defendant from a photograph. Clanton testified that Conrad also examined the photo and identified the defendant. During trial, defense counsel did not object to Clanton's testimony concerning Conrad's identification and in fact cross-examined the agent on the subject, repeating Conrad's statement and pinpointing its occurrence in detail.

Defendant was the sole witness in his own behalf. He denied selling heroin to Conrad or Clanton and denied ever seeing Clanton in his house, although he acknowledged that the agent's description of the house was accurate. He stated that he had known Conrad since 1973, when Conrad had moved into the house briefly during a separation from his wife, and that he and Conrad had been friends.

At the outset, it should be recognized that this case does not involve nondisclosure of an informant's existence or identity, as in *People v. Chaney* (1976), 63 Ill. 2d 216, 347 N.E.2d 138; *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685; *People v. Gibson* (1977), 54 Ill. App. 3d 898, 370 N.E.2d 262; *People v. Perez* (1974), 25 Ill. App. 3d 371, 323 N.E.2d 399, nor the refusal to supply the address of an informant as in *Smith v. Illinois* (1968), 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748; *United States v. Palermo* (7th Cir. 1969), 410 F.2d 468; *People v. Castro* (1973), 10 Ill. App. 3d 1078, 295 N.E.2d 538; and *People v. Shaw* (1969), 117 Ill. App. 2d 16, 254 N.E.2d 602; nor does the defendant argue that he was denied his sixth amendment right of confrontation by Conrad's nonproduction at trial (see *Cooper v. California* (1967), 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788.).

Defendant cites two cases as dispositive of the principal assignment of error, that is, the unavailability of the informant at trial. *People v. Wilson* (1962), 24 Ill. 2d 425, 182 N.E.2d 203, and *People v. Williams* (1968), 40 Ill. 2d 367, 240 N.E.2d 580, involved the sale of narcotics arranged or witnessed by one Ruth Killingsworth, a special employee, or informant, of the Federal Bureau of Narcotics, to Officer Inez Anderson, a city of Chicago police officer on loan to the Federal Narcotics Bureau. Prior to trial of both Wilson and Williams, an agent of the Federal Bureau of Narcotics drove Killingsworth to the railroad station, watched her and a male companion purchase tickets and board a train for Fort Worth, Texas. The agent had furnished Killingsworth $760 in official funds. Prior to both trials, the defense had moved for the production of Killingsworth

for an interview prior to trial and for her production as a possible witness at trial.

In *Wilson* the prosecution resisted production of the witness without further explanation, insisting that it was not required to call all material witnesses. The court, however, considered Killingsworth's testimony critical to the defendant's defense of entrapment and viewed the conduct of the Federal agent as a wilful course of conduct designed to send the witness out of the jurisdiction of the court so that she would be unavailable at trial. The court would not allow the State to divorce itself from the conduct of the Federal agents and held that the defendant was deprived of a fair trial. The issue of the State's ability or inability, and efforts made, to compel or bring about the appearance of the witness at trial was not reached.

In *Williams*, the defendant denied that he sold narcotics to the individual set out in the indictment. Again, Killingsworth was not available for interview by the defendant or as a witness at trial. The prosecution stipulated that the Federal authorities had sent her out of the State. The State attempted to distinguish *Wilson* by arguing that Williams had not denied selling narcotics to someone and it was never established how the presence of Killingsworth could aid Williams in his defense or what her testimony would be. The court, quoting from its decision in *Wilson*, held that the defendant was deprived of a fair trial and reversed because of the "governmentally prompted absence" of the witness. While both these cases may have a surface similarity to the instant case, here the trial court found, after hearing, that the informant's unavailability was not attributable to bad faith or coercion by the State.

The facts here resemble those present in *People v. Contursi* (1979), 73 Ill. App. 3d 458, 392 N.E.2d 331, and *People v. Coles* (1974), 20 Ill. App. 3d 851, 314 N.E.2d 526. In *Coles* an informant who was the sole witness to a sale of narcotics failed to appear at the defendant's probation revocation hearing. The informant had forfeited her bond, apparently on an unrelated charge, and a warrant had been issued for her arrest. The State disclosed the missing witness' name and last known address but could not produce her. The defendant's assertion that the informant's absence denied her a fair trial was rejected in light of the fact that the State had disclosed her identity and attempted to locate her. The court held that under those circumstances, there was no deprivation of defendant's right to a fair probation hearing. In *Contursi*, a like contention was summarily rejected.

The defendant asserts that the State encouraged or at least acquiesced in Conrad's absence, depriving him of a fair trial and due process of law. The trial court, after a full hearing, concluded that the State did not procure or encourage the informant's absence and later

unavailability. In this crucial respect the instant case is distinguishable from *Wilson* and *Williams*. We read these cases as condemning the active procurement of the unavailability of an informant for the purpose of insulating him from contact with the defense and preventing his appearance as a witness at trial.

The defendant argues that the State acquiesced in Conrad's departure from Illinois; however, the informant was not in custody and the defendant has not suggested how the State could prevent Conrad from exercising his privilege of travel as any citizen. Nothing indicates that the informant could lawfully have been detained in custody. Inasmuch as the Department could not prevent his departure, it would appear it adopted a reasonable approach so as to insure his cooperation. Had Conrad maintained contact with the Department, his later appearance at trial would appear to have been reasonably assured. Antagonism on the part of the agents of the Department could well have resulted in his noncooperation. We would further note that the record does not indicate that the defendant made any effort to locate Conrad. ■■ The trial court found that the Department's efforts to maintain contact with Conrad and to locate him in Florida were reasonable and made in good faith. These determinations were supported by the record and are clearly not against the manifest weight of the evidence.

A strikingly similar factual situation is presented in *People v. Jenkins* (1977), 41 N.Y.2d 307, 360 N.E.2d 1288. There an informant who arranged and witnessed a drug transaction told police prior to trial that she feared for her life and intended to move to Florida, receiving a plane ticket as payment for her services. Contrary to instructions, the informant whose identity was not disclosed until after trial commenced, did not resume contact with New York authorities and could not be produced at trial despite efforts of New York, Florida and Federal authorities. The court, satisfied that her absence was not attributable to prosecutorial bad faith, established a two-tiered test for considering defendant's due process and confrontation claims.

■■■ According to the *Jenkins* test, which we believe an appropriate test, the defendant is initially required to establish the relevance and materiality of the missing witness. Once these are established, the State assumes the burden of producing the witness, if that witness is or was employed by the State, or of exerting diligent efforts to do so. If the State can prove that it made reasonable good faith efforts to locate the missing witness, the indictment may not be dismissed nor may a new trial be ordered unless the defendant establishes that the informant's testimony was likely to be exculpatory or, in the alternative, likely to be impeached in a manner that would create a doubt as to the reliability of the State's case.

■■ Applying the *Jenkins* criteria to the case at bar, we do not find that

the defendant here demonstrated a likelihood that Conrad's testimony would be favorable in any manner. Accordingly, we cannot hold that Conrad's absence deprived defendant of his right to due process or deprived him of a fair trial.

■■ Defendant next asserts that he was prejudiced by Agent Clanton's testimony concerning Conrad's photographic identification. The agent's statement that Conrad selected the defendant's photograph was hearsay. Defense counsel did not object to Clanton's testimony, however, nor did he raise the issue in the post-trial motion; therefore, the issue is waived. (*People v. Foster* (1976), 43 Ill. App. 3d 490, 356 N.E.2d 1288.) Furthermore, identity was not an issue in the case, and defendant testified that he was well acquainted with Conrad.

The court is presumed to have disregarded the hearsay and based its decision on proper evidence. (*People v. Pagan* (1972), 52 Ill. 2d 525, 288 N.E.2d 102; *People v. Turner* (1976), 36 Ill. App. 3d 77, 343 N.E.2d 267.) After reviewing the record, we are satisfied that the hearsay evidence was in fact not considered.

● 6 Defendant next contends that the trial court erred by considering references in the presentence report to defendant's involvement in several drug sales that did not result in charges or convictions; however, defendant had three prior convictions that fully support the sentence imposed when considered with other information in the presentence report indicating his poor potential for rehabilitation.

■■ In *People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258, a defendant similarly alleged prejudice in that his presentence report contained information from police files indicating defendant's involvement in other crimes. The supreme court found no error in the inclusion of such information in the presentence report or in its consideration by the sentencing judge. The court is presumed to disregard incompetent evidence adduced at a presentence hearing. (*People v. Bey* (1972), 51 Ill. 2d 262, 281 N.E.2d 638.) We find no indication in the record that the court did consider any improper factors in imposing sentence. Furthermore, admission and consideration of conduct constituting other offenses is not error if relevant and the information has been verified as accurate. *People v. Barksdale* (1976), 44 Ill. App. 3d 770, 358 N.E.2d 1150.

The record before us indicates that defendant had ample opportunity to examine the report and assured the court that it was accurate:

"COURT: Mr. Drury [defense counsel], have you been furnished a copy of the Pre-Sentence Investigation report?

MR. DRURY: I have, Your Honor.

COURT: Have you had an opportunity to discuss it with your client?

MR. DRURY: I have, Your Honor.

COURT: Are you satisfied that it contains all the matters required by law?

MR. DRURY: I am.

COURT: Based upon the information you have, do you find it substantially correct?

MR. DRURY: I do.

COURT: Are there any additions or deletions to this report that you wish to note for the record?

MR. DRURY: None, Your Honor."

■■ In addition to defense counsel's assurances, the court was informed by the assistant State's attorney that the report was substantially correct. It is difficult to imagine what further measures the trial court could have taken to vouchsafe the report. Defendant's failure to object constituted a waiver of possible error in the report. *People v. Burdine* (1978), 57 Ill. App. 3d 677, 373 N.E.2d 694 (1st Dist. 1978).

The impact of the references in the report to other drug transactions is minimal, when viewed against the totality of the evidence. The report recites defendant's long history of admitted drug dependence and abuse. A probation officer called as a defense witness at the sentencing hearing testified that defendant had been a heroin addict for 25 years and that he had completed a 21-day heroin detoxification program in 1975 but resumed his heroin habit in 1976. The only conceivable prejudice defendant could have suffered from the reference to unrelated sales would derive from the inference that defendant had sold heroin more than once. In light of defendant's history and character, which had been thoroughly developed at the sentencing hearing, we do not find this information significant. As demonstrated in the written sentencing order specifying reasons for imprisonment, the court did not rely on the alleged unrelated transactions to determine defendant's punishment.

Defendant's allegation that his presentence report does not meet the criteria of section 5—3—2(a) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—3—2(a)) is not supported by the record. The report addresses the defendant's background, history of drug abuse, and rehabilitative potential, along with other considerations enumerated in the Unified Code of Corrections.

Defendant's final contention is that he was inadequately advised by the court concerning the sentence he would receive. The offense occurred in July 1977 and the trial was held in June 1978; therefore, defendant could elect whether to be sentenced under the Unified Corrections Code as it existed in 1977 or as it was amended, effective February 1, 1978. (Ill. Ann. Stat., 1978 Supp., ch. 38, par. 1008—2—4.) Defendant was advised by the court of the material differences in the maximum and minimum terms of imprisonment and supervised release under the two versions of

the statute and chose to be sentenced under the amended Act. Defendant now asserts that he was entitled to know the exact sentences that the court would impose under each version of the Unified Code of Corrections. We find no basis for this argument, and adhere to prior decisions rejecting the contention. *People v. Crutcher* (1979), 72 Ill. App. 3d 239, 248, 390 N.E.2d 571, 578; *People v. Dozier* (1979), 67 Ill. App. 3d 611, 615, 385 N.E.2d 155, 158; *People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175.

The judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and KASSERMAN, J., concur.