THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TOMAS TORRES, Defendant-Appellant.

First District (4th Division)   No. 1—87—3453

Opinion filed September 28, 1989.

Randolph N. Stone, Public Defender, of Chicago (Timothy J. Leeming and James H. Reddy, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Walter Hehner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant

was convicted of delivering more than 15 grams of heroin and less than 30 grams of cocaine (Ill. Rev. Stat. 1985, ch. 56½, pars. 1401(a)(1), (b)(2)) and was sentenced based upon the Class X felony to a term of six years' imprisonment. Defendant appeals, contending, as he did before, during and after the trial, that the informant utilized by the police in this case was a transactional informant who was material to his defense and that the State's refusal to provide him with the informant's address and the State's failure to make a diligent effort to produce the informant should have required that the charges against him be dismissed. Defendant also contends that he was denied effective assistance of counsel because a hearing on his motion to disclose was not requested prior to trial.

We reverse and remand.

BACKGROUND

Defendant was arrested at his home on January 8, 1987, and was charged by information filed February 15, 1987, with delivery of heroin and cocaine to an undercover police officer on September 9, 1986.

On March 26, 1987, defendant filed a motion requesting the State to disclose information concerning the whereabouts of the informant who had been utilized by the police in connection with the case. Defendant claimed in his motion that the informant and the informant's girl friend had been present and participated in the transaction for which defendant was being charged and, thus, the informant was a material witness. Defendant claimed it was necessary for him to be able to interview this witness in order to prepare his defense.

A brief hearing was held in conjunction with defendant's motion, at which time the State agreed to review its records to determine whether the informant was "transitionally involved." The matter was continued until April 23, 1987. Although the record indicates that hearings were held on April 23, May 18, and June 8, 1987, no transcripts of the proceedings have been provided. However, defendant contends and the State does not deny that, during these hearings, the court ordered the State to produce the informant and the State agreed to provide defendant with the opportunity to interview the informant prior to trial.

On July 8, 1987, when the case was called for trial, defense counsel notified the court that the State had repeatedly refused to make the informant available to defendant as ordered by the court and that the informant was again absent from court. Stating that the information known to the informant was essential to the defense, de-

fense counsel requested that the court dismiss the charges against defendant due to the State's refusal to produce the informant. The court refused to grant defendant's motion to dismiss, and the following conversation took place:

"THE COURT: I don't have any basis legally to dismiss the indictment because they [the State] don't bring the informant in.

MR. GRAHAM (Defense Counsel): Right, Judge.

THE COURT: So that's no basis for, legally for dismissal, so I can't dismiss the indictment.

MR. GRAHAM: Well, Judge—.

THE COURT: You may proceed with what they have.

MR. GRAHAM: Judge, I believe that the informant will be imperative to my defense and to the facts that will take place.

THE COURT: He's not here, Mr. Graham, so you will have to do and they will have to do, take the risk. Might be essential to their prosecution, too. I don't know."

Accordingly, trial commenced, and Chicago police officer Victor Guerrieri testified that about 8:30 p.m. on September 9, 1986, he was working in an undercover capacity when he purchased certain controlled substances from defendant. Guerrieri drove his undercover vehicle to the parking lot of a grocery store located at the corner of Keeler and North Avenue. Soon after parking in this lot, defendant approached his driver-side window and knocked. Guerrieri rolled down the window and asked if he was Tomas. When defendant replied in the affirmative, Guerrieri told him to get in and defendant got into the front passenger seat of the vehicle. Once inside the vehicle they discussed the purchase of one ounce of cocaine and one ounce of heroin. Defendant quoted a price of $2,300 for these drugs. When Guerrieri agreed, defendant told him to wait. Defendant then left the vehicle, entered his blue pickup truck and drove away. A short while later defendant returned to the parking lot and pulled up alongside of Guerrieri's car. Defendant told Guerrieri to get into the truck, which he did, and defendant then provided Guerreri with two clear plastic packages, one containing a white powder and the other containing a brown substance. Guerrieri then gave defendant the $2,300.

According to Guerrieri defendant told him that he could provide him with any quantity of drugs with just a few days' notice. Defendant then handed him a piece of paper with a telephone number on it and told Guerrieri to call it if he wanted to make any future purchases. Both defendant and Guerrieri then left the area in their re-

spective vehicles. Guerrieri drove to a predesignated rendezvous, where he met his partner and showed him the drugs he had purchased.

On cross-examination, Guerrieri admitted that he had never seen or spoken with defendant prior to September 9, 1986, and that the informant had made all the arrangements for the drug purchase. Guerrieri also admitted that the informant, who was known as "Chris," was really Leon Salmon and that this informant had been present at the time of the transaction. Guerrieri denied that the informant had, in fact, exchanged the drugs for money during the transaction and claimed that the informant had been standing about 15 feet away, near a telephone at the corner of Keeler and North Avenue. He described the informant as a longtime addict who had been working with the police for nearly a year and a half. The informant was paid to set up drug purchases, and Guerrieri admitted having contact with the informant as late as June 1987.

Guerrieri claimed that he had told the informant that the State's Attorney and judge in this matter wanted him to come to court, but that the informant refused, despite the fact that Guerrieri had interceded for the informant on various occasions when he had been arrested for various crimes and Guerrieri had been able to obtain special favors for the informant.

Guerrieri claimed that the reason defendant was not arrested until January 8, 1987, was that they intended to set up more deals. However, Guerrieri admitted that he never contacted defendant again. Furthermore, Guerrieri admitted that he did not keep the piece of paper with defendant's telephone number on it and that he did not inventory this piece of paper.

Finally, Guerrieri admitted that he had absolutely no knowledge of the methods used by the informant to set up the drug purchase and that the informant kept no records and had "free rein" to arrange the deals.

Although there were three additional surveillance officers present at the scene, they made no reports concerning the transaction and did not testify in court. The only other witness to testify was Guerrieri's partner, Jerry Hutch. Hutch testified that about 8:30 p.m. on September 9, 1986, he was sitting in his surveillance vehicle located at the northeast corner of Keeler when he observed defendant approach Guerrieri's car, get into the passenger side, and then exit the car and get into a blue pickup truck. He stated that defendant left the area and then returned shortly thereafter, at which time Guerrieri got into the truck. Soon after both defendant and Guerrieri left

the scene in their respective vehicles. He then met with Guerrieri at a predesignated location, where he observed the two packages of controlled substances that Guerrieri had purchased.

On cross-examination Hutch admitted that he could neither hear nor see the actual transaction from his position. He also admitted that there were several people, both male and female, in the grocery store parking lot at the time of the transaction and that an individual who he believed was working with his partner may have been present and standing near a telephone booth. However, he claimed that he did not know the informant or the informant's name and indicated that "we don't disclose the people we work with."

After a stipulation was entered that the two plastic bags submitted to the forensic chemist by Guerrieri contained 29.93 grams of cocaine and 20.51 grams of heroin, the State rested and defendant renewed his motion to dismiss. The trial court denied the motion and further held that the informant was "not a transactional informant under the definitions of that term in the cases that bear on the informant's privilege." However, the court granted defendant a continuance so that he could attempt to locate the informant.

On September 21, 1987, trial resumed. Since the informant could not be found, defendant was the only witness to testify for the defense. Defendant testified that on September 9, 1986, he received a telephone call from a man known to him as Leon. Defendant had known Leon for only about six months and had met him at a bar. Leon called defendant to ask him for a ride, and defendant agreed to give Leon a ride after he went to the grocery store. About 8:30 p.m., defendant proceeded to the grocery store, and as he left the store, he noticed Leon and Leon's girl friend in the parking lot talking with a man who was identified as Guerrieri. Leon then got into defendant's truck and they left the area. Defendant first brought the food he had purchased to his home and then drove Leon to Lincoln and Belmont. Leon left the truck and defendant drove around the block while he waited for Leon to return. Leon then get back into the truck, and defendant drove him back to the grocery store parking lot at Keeler and North Avenue, where Leon got into Guerrieri's car with his girl friend. Defendant denied delivering any controlled substances to Guerrieri or receiving any money from him. Defendant denied ever even speaking with Guerrieri.

After defendant testified the defense rested and argued, once again, that the informant was a material witness and that the State's refusal to produce the informant, who in all probability was still in the control of the State due to his long-standing relationship with the

police department, should be the basis for dismissing the charges against him.

Again the trial court refused, stating, "I don't think that I have the authority on the facts in this case to order the State to produce the informant." The trial court then found defendant guilty of the offenses charged.

In a post-trial motion, defendant continued to argue, as he had done previously, that it was error for the trial court to have proceeded to trial without requiring the State to produce the informant or make him available to defendant. The court denied the post-trial motion and sentenced defendant, who had no prior convictions and had been employed as a roofer, to the minimum sentence of six years' imprisonment.

OPINION

Defendant raises the issue of whether the State was obligated to produce the informant and whether its failure to do so warranted dismissal of the case.

■ Any discussion of the informer's privilege must begin with the benchmark case of *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623. In *Roviaro* the Court held that the informer's privilege, which is really the government's privilege to withhold the identity of persons who have provided them with information regarding the commission of a crime, is limited by the underlying purpose of the privilege, which is the furtherance and protection of public interest in effective law enforcement and the maintenance of channels of communication with informers by shielding their identity. Thus, the Court determined that "[w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60-61, 1 L. Ed. 2d at 645, 77 S. Ct. at 628.

■■ In *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685, our supreme court adopted the balancing test set forth in *Roviaro* for deciding issues regarding disclosure of an informant's identity. The *Lewis* court quoted *Roviaro*, stating that " '[w]hether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " (*Lewis*, 57 Ill. 2d at 235, 311 N.E.2d at 687, quoting *Roviaro*, 353 U.S. at 62, 1 L. Ed.

2d at 646, 77 S. Ct. at 629.) The *Lewis* court also held that to deny a defendant access to an informant when the informant could possibly provide the defendant with testimony that would be helpful to his defense is to deny the defendant his sixth amendment rights and, thus, the rule enunciated in *Roviaro* was consistent with Illinois Supreme Court Rule 412(j)(ii) (107 Ill. 2d R. 412(j)(ii)). The court went on to state that in instances where the informant is the only witness in a position to amplify or contradict the testimony of the government witnesses, then defendant must, at a minimum, be given the opportunity to interview the informer and call him as his own witness.

In this case, as in *People v. Stumpe* (1979), 80 Ill. App. 3d 158, 399 N.E.2d 292, we are not dealing with a nondisclosure of informant's existence or identity, or a refusal to supply the address of the informant. Instead we are dealing with defendant's claim that he was denied due process and the right to a fair trial by the State's failure to produce the informant for interview prior to trial or at trial so that he could be called by defendant as a possible witness. In cases such as these, it is first encumbent upon defendant to establish the materiality and relevance of the informant before the burden devolves upon the State to produce the informant. (*People v. Stumpe*, 80 Ill. App. 3d at 163.) Once the materiality or relevance of an informant is shown, the State will have the obligation to produce the informant if he is or was employed by the State, or the State must show that it made a reasonable, good-faith and diligent effort to locate the informant. (*People v. Stumpe*, 80 Ill. App. 3d at 163.) If the State can show that the informant is no longer within its control and reasonable efforts have been made to locate the informant, the indictment against defendant need not be dismissed or a new trial ordered, unless defendant establishes that the informant's testimony is likely to be exculpatory or that the informant could impeach the State's evidence in such a manner that would raise a doubt as to its reliability. (*People v. Stumpe*, 80 Ill. App. 3d at 163.) For an informant to be a material witness, it is not essential that he be present at or participate in the alleged offense if he has played an important rule in setting up the offense (*People v. Raess* (1986), 146 Ill. App. 3d 384, 496 N.E.2d 1186) and the defense calls into question the manner in which defendant became involved in the alleged offense, for example, where defendant presents a defense of entrapment. See *People v. Connor* (1988), 176 Ill. App. 3d 900, 531 N.E.2d 966.

Although defendant here did not present an entrapment defense, defendant contended that the informant was present at and

participated in the transaction and that the informant "set him up" to make it appear as though defendant was the drug contact when, in fact, it was the informant who had supplied and sold the drugs to Guerrieri. For this reason we believe that defendant did establish the materiality and relevance of the informant and that due process required the State to produce the informant to afford defendant the opportunity to, at a minimum, interview the informant.

Although the State's witness Guerrieri testified that defendant was the individual to sell the controlled substances to him, his testimony was virtually uncorroborated. Guerrieri's partner, Officer Hutch, only witnessed the scene from several feet away. Furthermore, neither Guerrieri nor Hutch had ever met defendant prior to September 9, 1986, and Hutch claimed that he did not know the informant. Thus, Hutch actually only corroborated the fact that a man approached Guerrieri's car and that this man left in a blue truck and then returned to the area. Thus, Hutch's testimony is entirely consistent with defendant's testimony that it was the informant and not himself who conducted the drug transaction and, consequently, only the informant was in a position to amplify or contradict the testimony of Guerrieri concerning defendant's culpability for the offense charged. In light of the fact that defendant's arrest was not contemporaneous with the alleged offense (defendant was not arrested until nearly four months later) and defendant was never contacted again or implicated in any additional alleged offenses, we find that the strength of Officer Hutch's corroborative testimony is severely diminished. We also find it significant that Guerrieri did not keep the piece of paper with defendant's phone number on it, which he alleged defendant had given him and which would have provided a link with defendant.

■■ ■ Furthermore, we find that the State was obligated to produce the informant since the informant had been employed by the State and was within the State's control until June 1987, when defendant had requested that the informant be made available for interview as early as March 1987. Although the State is not generally obligated to keep an informant within its control until the time of trial and may not restrict an informant's ability to travel freely (see *People v. Contursi* (1979), 73 Ill. App. 3d 458, 397 N.E.2d 331), the facts of this case indicated that the State continued to employ the informant on a regular basis until just a few weeks prior to trial. We also find it highly significant that prior to the trial the court had ordered the informant to be produced and the State had agreed but, subsequently, merely contended that it had requested the informant

to appear at trial but that the informant refused. This evidence indicates that the State did not meet its burden of producing the informant or of establishing that it had made diligent efforts to do so.

Based upon our above decision, we find it unnecessary to address defendant's claim of ineffective assistance of counsel.

The judgment of the circuit court of Cook County and defendant's conviction are reversed and the cause remanded for new trial.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.