(No. 68448.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LOUIS HOLMES, Appellee.

*Opinion filed January 24, 1990.—Modified on denial of rehearing April 9, 1990.*

Neil F. Hartigan, Attorney General, of Springfield, and Raymond Kimbell III, State's Attorney, of Galesburg (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Michael J. Singer, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle and John X. Breslin, of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Joseph N. Ehmann, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE CLARK delivered the opinion of the court:

The central question raised by this appeal is whether the State should be required to produce a government informant for trial where that informant's testimony could undermine the State's case against the defendant.

On November 6, 1986, defendant, Louis Holmes, was indicted in the circuit court of Knox County on two counts of unlawful delivery of cannabis (Ill. Rev. Stat. 1985, ch. 56½, pars. 705(c), (d)). The first count alleged that defendant sold cannabis to a police officer named Carl Powell in the presence of a government informant named Wayne Lee on February 25, 1986. The second

count alleged that defendant sold cannabis to the informant on March 5, 1986.

On February 5, 1988, defendant moved to dismiss the indictments on the grounds that the informant used by the State in the investigation that resulted in the indictments could not be located. A hearing on the motion was held on February 8, 1988.

Defendant argued at the hearing that under the three-part test articulated by the Illinois appellate court in *People v. Stumpe* (1979), 80 Ill. App. 3d 158, 163, the indictments should be dismissed. The *Stumpe* test requires that in order for an indictment to be dismissed due to the unavailability of a government informant, a defendant must first establish that the informant's testimony would be relevant and material. If that is established, the State must produce the informant for trial or show that it has made a reasonable good-faith effort to locate the witness. If the State meets its burden, the indictment can only be dismissed if the defendant can demonstrate that the informant's testimony would likely be exculpatory or, in the alternative, would likely be impeached in a way that would create doubt as to the reliability of the State's case. *Stumpe*, 80 Ill. App. 3d at 163.

The State, however, citing *People v. Contursi* (1979), 73 Ill. App. 3d 458, and *People v. Williams* (1968), 40 Ill. 2d 367, argued that the test set forth in *Stumpe* is inappropriate. Instead, the State contended that under *Contursi* and *Williams*, the indictments should not be dismissed unless defendant could show that the State was responsible for the unavailability of the informant. The trial court disagreed, holding that the defendant's claim should be assessed under the *Stumpe* test.

Both parties agreed that the informant's testimony would be material and relevant. Accordingly, under the *Stumpe* test the State then had the burden of proving that it had made a good-faith effort to locate the inform-

ant. (See *Stumpe*, 80 Ill. App. 3d at 163.) To meet its burden, the State presented the testimony of two police officers. The officers testified that they had unsuccessfully attempted to locate the informant by repeatedly going to the informant's house and speaking with people in the town where the informant lived and at a bar which the informant frequented. They also stated that the informant never told them that he would be unable to testify at trial. Finally, they both testified that they had not encouraged the informant to make himself unavailable. On cross-examination, both officers admitted that they had not spoken with anyone in the informant's family or contacted the Federal Bureau of Investigation, the Illinois State Police, or any other police agency in attempting to locate the informant.

The trial court found that the State met its burden of proving that it had made a reasonable good-faith effort to locate the informant. The burden then shifted to defendant to show that the informant's testimony would be exculpatory, or, in the alternative, would likely be impeached in a manner that would create a doubt as to the reliability of the State's case. See *Stumpe*, 80 Ill. App. 3d at 163.

Defendant first asked the trial judge to take judicial notice of the fact that the informant had five convictions for theft and three convictions for unlawful possession of cannabis. Defendant also noted that the State had stipulated to the fact that the State paid cash to, and promised to be lenient with, the informant in return for his services.

Defendant then gave the following testimony in regard to the events which took place on February 25, 1986, the day on which he allegedly delivered cannabis to a police officer. Defendant stated that he was in a bar with the informant on February 25, 1986, when the informant asked defendant to go out with him to defendant's car. While they were in the car, the informant told defendant that

the informant needed some marijuana. Defendant told the informant that defendant did not know where to find any. While they were talking, a man left the bar and got into a car that was five or six car lengths away. Defendant asked the informant if the man was the person who wanted the marijuana and the informant said yes. Defendant then told the informant that the man looked like a police officer and the informant said that it did not matter. The informant then pulled a bag of marijuana out of his pants and asked defendant if it looked like an ounce. Defendant replied that it did not make any difference because the police officer would take it in any event.

The informant then asked defendant to drive around the block while the informant talked to the other man. Defendant proceeded to drive around the block while the informant went over to talk to the other man. The other man was in fact a police officer.

After driving for a couple of blocks, defendant returned to the bar, intending to finish his game of pool. Before defendant could enter the bar, the informant came over to defendant's car and told defendant that he had told the other man to come over and that defendant should ask the other man for $50. Defendant told the informant that he did not want anything to do with the transaction. The informant then opened the door and waved to the other man, who then came over and got in the back seat of defendant's car. The informant then passed the bag of marijuana he had taken from his pants to the other man. The other man then rolled the marijuana into a cigarette, lit it, and passed it to the informant. The informant took a puff of the cigarette and offered it to defendant, but defendant refused it. The informant then passed the cigarette back to the other man. The informant asked the man to pass forward $50. The man placed the money on the armrest in the front

seat of the car. The informant took the money from the armrest and then left the car with the other man.

The State rebutted defendant's testimony through testimony from the police officer who had been involved in the drug transaction. The officer testified that the informant prepared a written statement eight days after the drug transaction which contradicted defendant's testimony. In particular, the statement indicated that it was defendant, not the informant, who possessed the marijuana and sold it to the police officer. The statement was then introduced into evidence.

Following argument by counsel, the trial judge found that defendant established that the informant's testimony would likely be exculpatory, or, in the alternative, would likely be impeached in a manner that would create a doubt as to the reliability of the State's case. Consequently, the trial judge dismissed the indictments with leave to reinstate upon the production of the informant for trial. The appellate court, in an unpublished order (184 Ill. App. 3d 1111), affirmed the trial court's decision pursuant to Supreme Court Rule 23 (107 Ill. 2d R. 23). We subsequently granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

Both the State and defendant renew here the arguments that they made below: the State argues that the indictments should only be dismissed if the State itself caused or encouraged the informant's unavailability and defendant argues that the *Stumpe* test should be applied.

The question presented in this case has not been addressed by this court in the past. In *People v. Williams* (1968), 40 Ill. 2d 367, 370, and *People v. Wilson* (1962), 24 Ill. 2d 425, 430, the question before the court was whether a conviction can stand where the government caused an informant to be unavailable for trial. This court held that such intentional governmental conduct deprived the defendants in each case of their due process

rights. (*Williams*, 40 Ill. 2d at 370-71; *Wilson*, 24 Ill. 2d at 430-32.) In the instant case, however, the government did not cause the informant's unavailability.

We similarly find *People v. Bowen* (1963), 29 Ill. 2d 349, distinguishable. In that case, the police searched the defendant without a warrant after an informant had told them that the defendant was selling drugs. The defendant unsuccessfully moved at trial to suppress the evidence obtained from that search on the basis that the police did not have reasonable grounds for the search. (*Bowen*, 29 Ill. 2d at 352-53.) On appeal, the defendant argued that there was "good reason to believe that the defendant was hampered in securing the attendance of the informer at the trial and was thereby deprived of the right to cross-examine him." (*Bowen*, 29 Ill. 2d at 353.) This court, finding that nothing in the record supported defendant's claim, rejected the argument. (*Bowen*, 29 Ill. 2d at 353.) This court also stated in *dictum* that "[t]he State was not obligated to produce the informer at the trial." *Bowen*, 29 Ill. 2d at 353.

*Bowen* is distinguishable because nothing in *Bowen* suggests that the informant's testimony would have been exculpatory. Accordingly, as with this court's decisions in *Williams*, 40 Ill. 2d 367, and *Wilson*, 24 Ill. 2d 425, the sole issue considered by the court was whether the State caused the informant's disappearance. As already discussed, the issue here is whether the State is obligated to produce its informant at trial, even though the State did not cause the informant's unavailability, where it is likely that the informant's testimony would undermine the State's case against the defendant.

We begin our analysis in this case by reviewing the United States Supreme Court's decision in *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623. In *Roviaro*, the Court held that the "fundamental requirements of fairness" require that the govern-

ment disclose the identity of its informants where the informants' testimony could be "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." (*Roviaro*, 353 U.S. at 60-61, 1 L. Ed. 2d at 645, 77 S. Ct. at 628.) Such disclosure is necessary to protect "the individual's right to prepare his defense." (*Roviaro*, 353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S. Ct. at 629.) The determination as to whether disclosure should be required, the Court explained, "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S. Ct. at 629.

Although the decision in *Roviaro* was based upon the Court's exercise of its supervisory jurisdiction, rather than upon any constitutional basis (see *McCray v. Illinois* (1967), 386 U.S. 300, 309, 18 L. Ed. 2d 62, 69, 87 S. Ct. 1056, 1061), the Court has since indicated that disclosure in *Roviaro* would have been required by due process as well. See *United States v. Valenzuela-Bernal* (1982), 458 U.S. 858, 870, 73 L. Ed. 2d 1193, 1204, 102 S. Ct. 3440, 3448; see also *California v. Trombetta* (1984), 467 U.S. 479, 485, 81 L. Ed. 2d 413, 419, 104 S. Ct. 2528, 2532 (due process requires "that criminal defendants be afforded a meaningful opportunity to present a complete defense").

The purpose of requiring the prosecution to disclose the names of government informants whose testimony might be material and helpful to a defendant's defense is to allow the defendant the opportunity to call the informants as witnesses, or at least to interview them in preparation for trial. (*Roviaro*, 353 U.S. at 64, 1 L. Ed. 2d at 647, 77 S. Ct. at 629.) Where the government frustrates that purpose by failing to disclose the informants' names (see *Valenzuela-Bernal*, 458 U.S. at 870, 73 L. Ed. 2d at

1204, 102 S. Ct. at 3448), or by causing the informants to be unavailable for trial (see *People v. Williams* (1968), 40 Ill. 2d 367, 370-71), due process is clearly violated. However, what is not clear, and what is at issue here, is whether due process is violated where that purpose is frustrated because the informant is unavailable for trial due to circumstances beyond the government's control. To resolve this question, it is necessary to first look to the United States Supreme Court's decisions in "what might loosely be called the area of constitutionally guaranteed access to evidence." *Valenzuela-Bernal*, 458 U.S. at 867, 73 L. Ed. 2d at 1203, 102 S. Ct. at 3446.

The Court has made clear that the government in the prosecution of a criminal case must disclose to the defendant any evidence in its possession that is material and exculpatory. (See *United States v. Agurs* (1976), 427 U.S. 97, 110-11, 49 L. Ed. 2d 342, 353-54, 96 S. Ct. 2392, 2400-01.) The government's failure to do so, whether done in good faith or bad faith, constitutes a violation of due process. (*Agurs*, 427 U.S. at 110, 49 L. Ed. 2d at 353, 96 S. Ct. at 2400-01.) As the Court explained, the due process violation occurs not because of "the character of the prosecutor" in withholding the evidence (*Agurs*, 427 U.S. at 110, 49 L. Ed. 2d at 353, 96 S. Ct. at 2401) but, rather, the violation results from the fact that the defendant was unable to introduce material evidence in his defense which could have created a reasonable doubt as to his guilt (*Agurs*, 427 U.S. at 110-13, 49 L. Ed. 2d at 353-55, 96 S. Ct. at 2400-02).

The Court in *Agurs* established a "materiality" standard to use in deciding whether a prosecutor's failure to disclose evidence violates due process. Under this standard:

"[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evalu-

ated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." (*Agurs*, 427 U.S. at 112-13, 49 L. Ed. 2d at 354-55, 96 S. Ct. at 2401-02.)

Thus, the "materiality" standard is essentially a "harmless error" standard. See *Agurs*, 427 U.S. at 112, 49 L. Ed. 2d at 354, 96 S. Ct. at 2401.

The Court's most recent decision in the constitutionally guaranteed access to evidence area of law is *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333. The defendant in *Youngblood* was convicted of sexual assault. After the assault had taken place, the police obtained the victim's clothing as evidence. However, they failed to keep the clothing refrigerated. As a result of this failure, it was impossible to later perform certain tests on semen samples from the clothing which could have exonerated the defendant. (*Youngblood*, 488 U.S. at 54, 102 L. Ed. 2d at 286-87, 109 S. Ct. at 335.) The issue before the Court was whether the State's failure to preserve the semen samples violated the defendant's due process rights. *Youngblood*, 488 U.S. at 51, 102 L. Ed. 2d at 285, 109 S. Ct. at 334.

The Court began its analysis by recognizing that "[t]he Due Process Clause of the Fourteenth Amendment * * * makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." (*Youngblood*, 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.) However, the Court proceeded to explain, due process "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which

might have exonerated the defendant." *(Youngblood,* 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.) Instead of the materiality standard set forth in *Agurs,* the Court in *Youngblood* utilized a "bad faith" standard in assessing the due process implications of the State's failure to preserve potentially exculpatory evidence. Under this standard, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood,* 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.

The State argues that, in light of *Youngblood,* we should not find that defendant's due process rights were violated unless the State acted in bad faith with regard to the informant's unavailability. We disagree.

The Court in *Youngblood* gave two reasons why a "bad faith" standard, rather than the "materiality" standard set forth in *Agurs,* is necessary in cases involving police destruction of "potentially useful evidence." As we will explain, neither of these factors justifies imposition of a "bad faith" standard in regard to the unavailable informant in this case.

The first reason given by the Court for imposing a "bad faith" standard is that " '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.' " *(Youngblood,* 488 U.S. at 57-58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337, quoting *California v. Trombetta* (1984), 467 U.S. 479, 486, 81 L. Ed. 2d 413, 421, 104 S. Ct. 2528, 2533.) However, unlike the destroyed evidence in *Youngblood,* whose import could only be determined by engaging in speculation as to what the unperformed tests might have revealed, a defendant frequently will be able to affirmatively demonstrate what an informant will testify to and how it would be impor-

tant to his defense. For example, in the instant case, it is undisputed that the informant had been convicted of theft on five occasions and of unlawful possession of cannabis on three occasions. It was also undisputed that the State paid the informant and promised that it would be lenient with him in exchange for his services. If the informant were available to testify, this information would come out during cross-examination. We believe that a trial court judge who is familiar with the evidence which will be presented in the case could determine the import of such testimony to the defendant's case.

The second reason given by the Court for adopting a "bad faith" standard for destroyed evidence is that the Court was unwilling to find that due process imposes "on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." (*Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289, 104 S. Ct. at 337.) It would certainly be an onerous burden to require that the police retain and preserve any material which they have found in the course of investigating a crime because such material could conceivably have some evidentiary value in the future. Where, however, the police did not simply find the material, but instead actually caused the material to have evidentiary significance (*e.g.*, by employing an informant to participate in the criminal activity for which a defendant is being prosecuted), and where the defendant can affirmatively demonstrate that the material is likely to undermine the State's case, we do not believe that it imposes an unfair burden to require that the State insure that the material be available for trial.

The State, however, quoting *United States v. Hoffman* (1st Cir. 1987), 832 F.2d 1299, 1303, argues that there can be no due process violation based upon the unavailability of an informant unless a defendant can

"demonstrate some plausible nexus between *** [some] governmental conduct and the absence of certain testimony." Unless such causation can be shown, the State argues, there can be no State action and therefore no due process violation. We disagree.

In *Hoffman*, the unavailable witness was not an informant who had been specially employed by the government in its investigation of the defendant. Instead, the witness was simply a person who, independent of any governmental conduct, had been present at the scene where the police found drugs which the defendant had allegedly sold to a third party. (*Hoffman*, 832 F.2d at 1301.) Due to the lack of any relationship between the government and the witness, there could have been no State action in *Hoffman* unless some governmental conduct caused the witness' disappearance. Here, however, there is no dispute that the informant was employed by the State and that the State caused him to play a critical role in the investigation which led to the indictment against defendant. We find that the State, having benefited from its use of an informant to initiate this prosecution, cannot now claim that there is no State action where that informant has made himself unavailable for trial.

We find further support for rejecting the State's claim that there can be no State action absent governmental conduct which caused an informant's disappearance in the Supreme Court's decision in *Agurs*. As we have discussed, *Agurs* established that a prosecutor has a duty to disclose to a defendant exculpatory material that is in the prosecutor's file, whether the defendant has requested the material or not. (*Agurs*, 427 U.S. at 110, 49 L. Ed. 2d at 353, 96 S. Ct. at 2400-01.) The failure to disclose the material violates due process even where the failure to disclose was based solely upon the fact that the prosecutor simply "overlooked" the material's significance. (*Agurs*, 427 U.S. at 110, 49 L. Ed. 2d

at 353, 96 S. Ct. at 2400.) Thus, *Agurs* demonstrates that a due process violation may occur where exculpatory evidence has not been made available to a defendant, even where the government was not responsible for the evidence's unavailability.

Our discussion of *Agurs* and *Youngblood* makes clear that we do not believe that the due process implications of a government informant's unavailability for trial should be assessed by focusing exclusively upon whether the State has acted in "bad faith." Instead, we find the "materiality" standard, as set forth by the Court in *Agurs*, 427 U.S. at 112-13, 49 L. Ed. 2d at 354-55, 96 S. Ct. at 2401-02, to be the proper due process standard. As we will explain, we further find that the *Stumpe* test is the proper mechanism for applying the "materiality" standard in situations such as the one presented here.

The three-part test that we have referred to as the *Stumpe* test was developed by the court of appeals of New York in *State v. Jenkins* (1977), 41 N.Y.2d 307, 360 N.E.2d 1288, 392 N.Y.S.2d 587. In *Jenkins*, the court explained that where a defendant seeks production of a governmentally employed informant, the defendant must first demonstrate the materiality and relevance of the informant's testimony. (*Jenkins*, 41 N.Y.2d at 312, 360 N.E.2d at 1291, 392 N.Y.S.2d at 590.) As defendant notes, this burden is nothing more than the burden that is required anytime a defendant seeks disclosure of an informant's identity under *Roviaro*, 353 U.S. at 61-62, 1 L. Ed. 2d at 645, 77 S. Ct. at 628.

Once the defendant meets this initial burden, the court in *Jenkins* explained, the State must produce the informant, or, if that is impossible, the State must demonstrate that it has exerted a good-faith effort to make the witness available. (*Jenkins*, 41 N.Y.2d at 311-12, 360 N.E.2d at 1291, 392 N.Y.S.2d at 589-90.) We find that the State's duty to exert good-faith efforts to locate the informant

flows from its duty to disclose the informant's identity. As we stated earlier, the purpose of the requirement in *Roviaro* that the prosecution disclose the identity of government informants is to allow the defendant the opportunity to call the informants as witnesses, or at least to interview them in preparation for trial. (See *Roviaro*, 353 U.S. at 64, 1 L. Ed. 2d at 647, 77 S. Ct. at 629.) Mere disclosure of the informants' names without an opportunity to locate them would do little towards achieving this purpose. (See *State v. Goliday* (1973), 8 Cal. 3d 771, 778, 505 P.2d 537, 542, 106 Cal. Rptr. 113, 118; *State v. Bullen* (Haw. 1980), 620 P.2d 728, 731.) Accordingly, we agree with virtually every Federal and State court that we are aware has considered the issue in concluding that the State has a duty not only to disclose an informant's identity, but also to exert a reasonable good-faith effort to locate him. See, *e.g.*, *United States v. Hart* (9th Cir. 1976), 546 F.2d 798, 802-03 & n.8 (citing Federal cases); *Goliday*, 8 Cal. 3d at 782, 505 P.2d at 545, 106 Cal. Rptr. at 121; *State v. Wandel* (Colo. 1985), 696 P.2d 288, 291; *Bullen*, 620 P.2d at 731; *State v. Sandoval* (1981), 96 N.M. 506, 508, 632 P.2d 741, 743.

Where the State has made a good-faith effort to locate the informant, but cannot produce him, the defendant must affirmatively demonstrate that the informant's testimony "would tend to be exculpatory or would create a reasonable doubt as to the reliability of the prosecution's case either through direct examination or impeachment." (*Jenkins*, 41 N.Y.2d at 310-11, 360 N.E.2d at 1290, 392 N.Y.S.2d at 589.) We view this third prong of the *Jenkins/Stumpe* test as creating a due process standard comparable to the "materiality" standard set forth in *Agurs*, 427 U.S. at 112-13, 49 L. Ed. 2d at 354-55, 96 S. Ct. at 2401-02. Under both standards, a defendant must demonstrate that, in the context of all of the evidence that has been or will likely be presented at trial,

the unavailable evidence would raise a reasonable doubt as to the State's case. See *Agurs,* 427 U.S. at 112-13, 49 L. Ed. 2d at 355, 96 S. Ct. at 2402; *Jenkins,* 41 N.Y.2d at 310-11, 360 N.E.2d at 1290, 392 N.Y.S.2d at 589.

The defendant's burden of proof under the third prong of the *Jenkins/Stumpe* test is "a higher burden" than the defendant's initial burden of showing that the testimony would be material and relevant. (*Jenkins,* 41 N.Y.2d at 310, 360 N.E.2d at 1290, 392 N.Y.S.2d at 589.) Although the courts which have applied the *Jenkins/Stumpe* test have not specified precisely what this "higher burden" of proof consists of, we note that we are not aware of any case where a defendant has been able to meet this "higher burden." (See, *e.g., Stumpe,* 80 Ill. App. 3d at 163-64; *State v. Maneiro* (1980), 49 N.Y.2d 769, 771, 403 N.E.2d 176, 178, 426 N.Y.S.2d 471, 473; *Jenkins,* 41 N.Y.2d at 311-12, 360 N.E.2d at 1291, 392 N.Y.S.2d at 590.) In light of these decisions, and this court's decision in *People v. Lawson* (1977), 67 Ill. 2d 449, we conclude that a defendant can only prevail under the third prong of the *Jenkins/Stumpe* test where the defendant proves by clear and convincing evidence that the unavailable inform- ant's testimony would raise a reasonable doubt as to the State's case.

The issue in *Lawson* was whether a "trial court has authority to dismiss an indictment, information or com- plaint on the basis of denial of due process even though that is not one of the grounds listed in section 114—1 of the Code of Criminal Procedure of 1963." (*Lawson,* 67 Ill. 2d at 455.) This court held that "[b]ecause the trial court has the obligation to insure a fair trial, it would seem only reasonable that, where there has been an une- quivocally clear denial of due process *** , the trial court has the inherent authority to dismiss." (*Lawson,* 67 Ill. 2d at 456.) This court recognized, however, that its hold- ing in *Lawson* "must not be construed as an invitation

to disregard statutory provisions on dismissal. The courts must proceed with restraint and ascertain pre-indictment denial of due process only with *certainty.*" (Emphasis added.) *Lawson,* 67 Ill. 2d at 457.

The State argues that the *Stumpe* test places an "onerous burden on the prosecutor to keep tabs on witnesses who are not in state custody." We agree that the *Stumpe* test imposes a burden upon the State. However, we note that it is a burden which will rarely arise. Frequently, an informant will not be a material witness to a crime. (See *Eleazer v. Superior Court* (1970), 1 Cal. 3d 847, 852, 464 P.2d 42, 45, 83 Cal. Rptr. 586, 589.) Where the informant is a material witness, a defendant still must satisfy the heavy burden of making a clear and convincing showing that the informant's testimony would likely raise a reasonable doubt as to the State's case. In those instances where such a showing has been made, we find that fundamental fairness dictates that the State, rather than the defendant, bear the burden of producing the witness. After all, it was the State that chose to employ and benefit from the services of the informant in the first place. (See *Velarde-Villarreal v. United States* (9th Cir. 1965), 354 F.2d 9, 13.) It should therefore be the State that has the burden of producing the informant where that informant's testimony is critical to the defendant.

Having found the three-part *Stumpe* test to be appropriate here, we must now review the trial court's application of the test to the facts in this case. We note initially that both parties agree, as do we, with the trial court's conclusion that the informant's testimony would be relevant and material. Defendant, however, disagrees with the trial court's conclusion that the State had made a good-faith effort to locate the informant.

The State attempted to demonstrate that it had made a good-faith effort to locate the informant through the

testimony of two police officers. The officers testified that they had made several unsuccessful attempts at contacting the informant at his home. They also testified that on numerous occasions they had spoken with patrons at a local bar which the informant had frequented and with other people "on the street" in an effort to locate the informant. One of the people they spoke with indicated that the informant had been living in Georgia for several months. On cross-examination, the officers admitted that they had not attempted to contact any members of the informant's family or any law enforcement agencies in Illinois or any other State in searching for the informant.

The trial court found that the State met its burden under the second prong of the test, concluding that "there has been a minimal effort on the part of the State, which is a prima facie showing." The appellate court, although finding that it was "a close[] call" whether the State's efforts to locate the informant were in good faith, affirmed the trial court's finding.

The determination as to whether the State's efforts to locate an informant were in good faith is a question of fact for the trial court which will be overturned on review only if it is clearly erroneous. (See *United States v. Hart* (9th Cir. 1976), 546 F.2d 798, 801-03.) In this case, the trial court heard the testimony of the police officers on direct and cross-examination and considered the options that were available to them in their search for the informant. Our review of the record indicates that the court's finding of good faith was not clearly erroneous. We therefore affirm the trial and appellate courts' conclusions that the State exerted a good-faith effort to locate the informant.

Having affirmed the trial court's finding regarding the State's good faith, we turn now to the trial court's

application of the third prong of the *Jenkins/Stumpe* test.

Defendant claims that the informant's testimony would raise a reasonable doubt as to the State's case in regard to count I of the indictment because the testimony would either be exculpatory in that it would confirm defendant's version of the events which occurred on February 25, 1986 (*i.e.*, that it was the informant and not defendant who delivered the cannabis to the police officer), or would be impeached in a manner that would create a doubt as to the reliability of the State's case. However, defendant offers nothing more than his uncorroborated assertion of the events which took place on February 25 in support of his claim that the informant's testimony would be exculpatory. Such an uncorroborated assertion, standing alone, is clearly insufficient to establish that the informant's testimony would be exculpatory. (See *State v. Maneiro* (1980), 49 N.Y.2d 769, 771, 403 N.E.2d 176, 178, 426 N.Y.S.2d 471, 473.) Thus, defendant's claim that the informant's testimony would raise a reasonable doubt as to the State's case relies solely upon the fact that the informant would be subject to impeachment.

The problem with defendant's claim is that the informant's credibility is not relevant to the State's case. It appears that the State will attempt to prove that defendant delivered the cannabis by introducing the testimony of the police officer to whom defendant allegedly delivered the cannabis. Defendant has not raised entrapment as a defense here. Rather, defendant simply claims that it was the informant, not defendant, who delivered the cannabis to the police officer. Thus, for defendant to succeed in his defense, he must impeach the credibility of the police officer. As we have already stated, nothing in the record indicates that the informant's testimony itself would impeach the officer's credibility. Instead,

defendant's claim is based upon his assertion that cross-examination of the informant concerning his relationship to the State in this case would in some way impeach the officer's testimony.

The trial court in this case ruled, in granting a motion *in limine* filed by the State, that evidence concerning the informant's relationship to the State would be inadmissible if introduced for the sole purpose of impeaching a witness who did not testify at trial (see *People v. Pearson* (1970), 126 Ill. App. 2d 166, 179). Although we need not decide here whether the trial court's ruling was correct, we do find that such evidence could be admissible if it is offered to impeach the officer's testimony or to support defendant's defense. Defendant, however, has not shown that the informant's testimony would provide anything which would impeach the officer or support defendant's defense beyond the facts that the State paid and promised leniency to an informant, an eight-time convict, to play a major role in the drug transactions that led to defendant's arrest in this case, facts which have already been stipulated to by the State. Accordingly, defendant will have the opportunity to impeach the officer and support his defense with these facts even if the informant is unable to testify.

Because we conclude that defendant will be able to introduce evidence concerning the State's use of the informant in this case even if the informant fails to testify, and because defendant has not demonstrated that the informant's testimony itself would be exculpatory, we find that defendant has failed to make a clear and convincing showing that the informant's testimony would raise a reasonable doubt as to the State's case in regard to count I of the indictment. Accordingly, we reverse the appellate court's judgment affirming the trial court's dismissal of count I of the indictment. However, as we will

explain, we affirm the appellate court's judgment with respect to count II of the indictment.

Count II of the indictment alleges that defendant sold cannabis to the informant on March 5, 1986. Apparently, the informant was the only witness to the alleged transaction and so the State's case against defendant with respect to count II depends entirely upon the credibility of the informant's version of what occurred on March 5, 1986. Defendant has demonstrated, and the State does not dispute, that the informant's version of the events that occurred on March 5, 1986, if the informant were to testify, would be subject to severe impeachment in that the informant has eight prior convictions (three of which were for drug-related offenses), and the informant was paid money and promised leniency by the State in exchange for his services. We find that such impeachment could call into question the credibility of the informant's version of what took place on March 5, 1986, and therefore could raise a reasonable doubt as to the State's case with regard to count II of the indictment. Accordingly, we affirm that part of the appellate court's decision which affirmed the trial court's dismissal of count II of the indictment.

For the foregoing reasons, we affirm that part of the appellate court's judgment which affirmed the trial court's dismissal of count II of the indictment. We reverse that part of the appellate court's judgment which affirmed the trial court's dismissal of count I of the indictment. Count I of the indictment is therefore reinstated and the cause is remanded to the circuit court of Knox County.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*